PEOPLE v SERRA

1. DRUGS AND NARCOTICS—CONSTITUTIONAL LAW—MARIJUANA—POS-
   SESSION—PRESUMPTIONS—INTENT—SELF-INCRIMINATION.

   The statutory presumption that possession of marijuana in an
   amount in excess of two ounces constitutes possession with
   intent to deliver is unconstitutional as a violation of the privi-
   lege against self-incrimination (US Const Am V, XIV; Const
   1963, art 1, § 17; MCLA 335.341[2]).

2. DRUGS AND NARCOTICS—CONSTITUTIONAL LAW—MARIJUANA—PRE-
   SUMPTIONS—INTENT—DEFENSES—RIGHT TO REMAIN SILENT.

   The statutory presumption that possession of over two ounces of
   marijuana constitutes possession with intent to deliver involves
   an inference from the fact of possession to the possessor's
   intent and the only evidence which can effectively rebut such
   an inference is the testimony of the defendant as to his intent,
   and thereby his choice of exercising his constitutional right to
   remain silent is nullified (MCLA 335.341[2]).

3. DRUGS AND NARCOTICS—MARIJUANA—INTENT—PRESUMPTIONS—IN-
   FERENCES—JURY—COERCION.

   The statutory presumption that possession of more than two
   ounces of marijuana constitutes possession with intent to de-
   liver, by raising an inference from the fact of possession to the
   possessor's intent, while not technically a conclusive presump-
   tion, coerces the jury to draw the inference of intent to deliver,
   and the presumption becomes conclusive (MCLA 335.341[2]).

4. CRIMINAL LAW—PRESUMPTIONS—CONCLUSIVE PRESUMPTIONS—CON-
   STITUTIONAL LAW.

   Conclusive presumptions are absolutely forbidden in criminal
   prosecutions and the presumption need not be labeled conclu-
   sive to run afoul of constitutional protections.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 47.
[2] 29 Am Jur 2d, Evidence § 638 *et seq.*
[4] 29 Am Jur 2d, Evidence §§ 11, 164, 165.
[5] 73 Am Jur 2d, Statutes § 254.
[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 37 (supp).

5. STATUTES—CONSTITUTIONAL LAW—CONFLICTS—COURTS.

The conflict between a statute and constitutional provisions must be clear and inevitable before the courts will strike down a statute as unconstitutional.

6. CONSTITUTIONAL LAW—STATUTES—CONTROLLED SUBSTANCES ACT— CRIMINAL INTENT—PRESUMPTIONS—DEFENSES—SELF-INCRIMINA- TION—DUE PROCESS.

The statutory presumption section of the Controlled Substances Act of 1971 which provides that possession of more than two ounces of marijuana is prima facie evidence of possession with intent to deliver is constitutionally infirm because there is no rational connection between the proven fact of possession of two ounces or more of marijuana and the presumed fact of intent to deliver, and such a statutory presumption impermissi- bly compels a defendant to take the stand in violation of his right against self-incrimination and violates the due process clause of the Fourteenth Amendment (US Const, Am V, XIV; Const 1963, art 1, § 17; MCLA 335.341[2]).

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 April 3, 1974, at Detroit. (Docket Nos. 17390, 17391.) Decided September 17, 1974.

Jacob Serra and Helen Serra were charged with possession of marijuana with intent to deliver. The complaints and warrants were quashed in circuit court and the defendants were released. The peo- ple appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Donald C. Roberge,* Assist- ant Prosecuting Attorney, for the people.

*Stephen M. Losh, P. C.,* for defendant Jacob Serra.

*Bruce A. Karash,* for defendant Helen Serra.

Before: BASHARA, P. J., and BRONSON, and CAR-
LAND,* JJ.

BRONSON, J. We are called upon to determine
the constitutionality of a provision of the recently
enacted "Controlled Substances Act of 1971".[1] The
challenged section provides, in pertinent part:

"(2) Possession of more than 2 ounces of marihuana is
prima facie evidence of possession with intent to de-
liver." MCLA 335.341(2); MSA 18.1070(41)(2).

There are other appeals pending before this
Court which present the same issues raised here.
Not all trial judges are in agreement concerning
the provision in question.

Michigan's Controlled Substances Act of 1971 is
principally a reenactment of the Uniform Con-
trolled Substances Act approved by the National
Commissioners on Uniform State Laws in 1970.[2]
The commissioners, in a prefatory note to the
Uniform Act, relate the following objectives and
purposes, *inter alia:*

"A main objective of this Uniform Act is to create a
coordinated and codified system of drug control, similar
to that utilized at the Federal level, which classifies all
narcotics, marihuana, and dangerous drugs subject to
control into five schedules, with each schedule having
its own criteria for drug placement. This classification
system will enable the agency charged with implement-
ing it to add, delete, or reschedule substances based
upon new scientific findings and the abuse potential of
the substance.

\* \* \*

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 335.301 *et seq.;* MSA 18.1070(1).

[2] *See, generally:* 9 ULA Matrimonial, Family & Health Laws, p 145
*et seq.*

"The Act sets out the prohibited activities in detail, but does not prescribe specific fines or sentences, this being left to the discretion of the individual States. It further provides innovative law enforcement tools to improve investigative efforts and provides for interim education and training programs relating to the drug abuse problem." 9 ULA, *supra,* pp 146–147.

The commissioners and drafters of the Uniform Act intended that the act be an effective law enforcement tool, as written, with the states free to prescribe the specific fines and penalties for the delineated statutory offenses.

The presumption presently under constitutional attack is not found in the Uniform Act. The Michigan Legislature added it when the Uniform Act was adopted in 1971. The origin of this added presumption is unclear. It has no direct antecedent in prior Michigan laws promulgated to control abuse and trafficking in illegal narcotics.[3]

The Uniform Act creates the substantive statutory offense of "possession with intent" in section 401(a), using the following language:

"(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or *possess with intent* to manufacture or deliver, a controlled substance." § 401(a), Uniform Controlled Substances Act, 9 ULA, p 266.

The Michigan analogue (MCLA 335.341[1]; MSA 18.1070[4][1]) is identical.

In 1973 the Commissioners on Uniform Laws recommended the decriminalization of possession

---

[3] *See: Uniform Narcotic Drug Act,* 1937 PA 343 (MCLA 335.51 *et seq.;* MSA 18.1071 *et seq.)* repealed by 1971 PA No 196, eff. April 1, 1972; *hypnotic drugs,* 1943 PA 204 (MCLA 335.101 *et seq.;* MSA 18.1101 *et seq.)* repealed by 1971 PA No 196, eff. April 1, 1972; *suppression of illegitimate traffic in narcotic drugs,* 1952 PA 266 (MCLA 335.151 *et seq.;* MSA 18.1121 *et seq.),* repealed by 1971 PA No 196, eff. April 1, 1972.

and distribution of small quantities of marijuana.[4] The newly recommended section 409,[5] after withdrawing completely the criminal sanction from certain marijuana-related activities, sets forth a

[4] The conclusions of the commissioners are expressed in their comment published in the 1973 supplement to 9 ULA § 409 on page 29. The comments provide:

"These [1973] amendments [sections 401(a) and 401(c) and new section 409] implement the recommendations of the National Commission on Marihuana and Drug Abuse by withdrawing the criminal sanction from certain marihuana-related activities. For a full discussion of the Commission's rationale, see Marihuana: A Signal of Misunderstanding, and Drug Use in America: Problem in Perspective, the first and final Reports of the National Commission on Marihuana and Drug Abuse.

\*   \*   \*

"Subsection (a) of new Section 409 establishes two general classes of activity from which existing criminal sanctions are withdrawn: 1) possession for personal use; and 2) small-scale casual distribution for no remuneration or no profit."

[5] § 409. [Possession and Distribution of Marihuana]

"(a) Section 401(a) and (c) do not apply to the following acts which, except as provided in subsection (c), are not unlawful:

"(1) possession of marihuana by an individual for personal use; and

"(2) distribution of small amounts of marihuana by an individual for no remuneration or insignificant remuneration not involving a profit.

"(b) Possession by an individual of not more than one ounce of marihuana is presumed to be for personal use under subsection (a).

"(c) Notwithstanding subsection (a), it is unlawful for any individual knowingly or intentionally to:

"(1) possess in public more than one ounce of marihuana;

"(2) distributed marihuana in public; or

"(3) smoke or otherwise ingest marihuana in public.

A person who violates this subsection is guilty of a misdemeanor and upon conviction may be fined not more than [        ].

"(d) Any amount of marihuana possessed or distributed in public is subject to summary seizure under Section 505(f).

"(e) The use of a conveyance to facilitate the acts described in subsection (a) does not subject the conveyance to forfeiture under Section 505(a)(4)."

*See, also, Advisory Task Force; Victimless Crime Study,* Michigan Department of Public Health Office of Substance Abuse Services (1973) (recommending decriminalization of possession of marijuana).

Those interested in a discussion of the historical underpinnings of society's attempts to regulate marijuana use can profitably consult Richard J. Bonnie and Charles H. Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition,* 56 Va L Rev 971 (1970).

new rule of evidence. This new evidentiary rule creates a presumption which is the converse of the presumption we are presently considering. The section now reads:

"(b) Possession by an individual of not more than one ounce of marihuana is presumed to be for personal use under subsection (a)." (See footnote 5.) 9 ULA, § 409, p 28 of supplement.

While Michigan has adopted the substantive offense of possession with intent to deliver (which could be charged and established independently of the presumption of MCLA 335.341[1] [c]), the Legislature apparently felt it necessary to deviate from the Uniform Act by adding the presumption in question.

With the origin and context of the presumption in proper perspective, we now direct our attention to the facts and contentions of the defendants-appellees in the instant case.

Pursuant to warrant, a search was conducted during July, 1972 of the residence of defendants Jacob and Helen Serra. As a consequence, marijuana plants in the yard and various containers of marijuana in the house were seized. It was the conclusion of the police officers conducting the search that the quantity of marijuana seized was in excess of two ounces.

Each of the defendants was charged with possession of a controlled substance (marijuana) with intent to deliver. MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). The charged offense is a four-year felony providing in addition a maximum fine of $2,000.

Probable cause for the charged crime was based solely on MCLA 335.341(2); MSA 18.1070(41)(2)—

the two-ounce presumption section.[6]

After arraignment in the Macomb County Circuit Court defendants filed motions to declare the two-ounce presumption unconstitutional and to quash the complaints and warrants and additionally to release defendants from custody.

Defendants there asserted that MCLA 335.341(2); MSA 18.1070(41)(2), *supra,* violates both the Fifth and Fourteenth Amendments to the United States Constitution[7] and article 1, § 17 of the Michigan Constitution.[8]

On March 28, 1973, the Honorable Howard R. Carroll, Circuit Judge, held the presumption in question unconstitutional as a violation of the defendants' privilege against self-incrimination. We agree.

Both the Michigan and United States Constitutions provide that "a person shall not be compelled in a criminal case to be a witness against himself".

Statutory presumptions are merely aids to expedite prosecution. Possession of large amounts of a controlled substance will give rise, without the artificial boost of a presumption, to an inference that the person possessing it intended to deliver it. A presumption is created when the Legislature decides that a given amount (here two ounces) should, in its judgment, give rise to the inference. The presumption gives force of law to an otherwise ordinary inference. In enacting such a statute, the Legislature seeks to convince the jury that it should make such an inference when presented

---

[6] This conclusion is in plaintiff-appellant's statement of facts which was stipulated to by appellees in their brief. While we do not understand appellees to be conceding probable cause, we accept the statement for purposes of analysis.

[7] US Const, Am V and XIV.

[8] Const 1963, art 1, § 17.

with the appropriate facts. If the jury is forced to draw the inference, the presumption is deemed conclusive. The presumption in this case is rebuttable; *i.e.,* defendants can avoid its force by introducing evidence that they did not possess the marijuana with intent to deliver. The jury is not compelled to draw the inference but is merely encouraged to do so.

But the presumption in this case is unique in that the actual state of mind of the accused is involved.

Most presumptions which have been considered by courts have involved inferences from one fact about a certain object or relation to another, more remote, fact *about that same object or relation.* For example, in *People v Kayne,* 286 Mich 571; 282 NW 248 (1938), the Supreme Court sustained a presumption written into a local ordinance. It provided that display of a registration plate on a motor vehicle parked illegally constituted prima facie evidence that the owner of the vehicle parked it. The Court held that such a presumption did not violate the defendant's privilege against self-incrimination. The presumption in *Kayne* involved an inference from one fact about the car (that it had a certain registration number) to another fact about the car (that its owner parked it illegally). Significantly, the presumption in *Kayne* did *not* involve an inference from a fact about the car to a fact about the owner's *intent (e.g.,* that he intended to park it illegally).

It is this feature of the presumption in question which requires us to give it different treatment. It involves an inference from the fact of possession to the fact of the possessors' *intent,* rather than some fact which can be shown independent of the de-

fendants' state of mind.[9] The only evidence which
can effectively rebut such an inference, supported
and enhanced by the presumption, is the defend-
ants' own testimony as to their intent. Any other
evidence, even expert testimony, is mere specula-
tion about that intent. Probabilities established by
an expert are only suggestions.

We are not persuaded by the argument that the
defendants can choose not to take the stand to
testify. The choice offered defendants is an empty
one. It has been nullified by the heavy hand of a
Legislature which imposes a penalty, in the form
of a statutory presumption, on those who decide to
exercise their constitutional right to remain silent.

Nor is it an answer to say that the presumption
is not conclusive and that defendants can still get
to the jury and avoid a directed verdict by arguing
that the inference, even though sanctioned by the
Legislature, is not compelling. While it is true that
the presumption in question is not technically a
conclusive presumption, since the jury might disre-
gard the trial judge's authoritative instruction and
the Legislature's stern advice, labels alone cannot
alter the real and intended impact of the presump-
tion. It seems to us that the jury's choice is as
illusory as defendants'. A jury cannot realistically
be expected to ignore the presumption. The infer-
ence that defendants intended to deliver the con-

[9] We do not purport to reach in this decision other types of pre-
sumptions, e.g., MCLA 257.625a; MSA 9.2325(1) (presumptions regard-
ing sobriety drawn from alcohol content in blood); MCLA 752.903;
MSA 28.603(3) (presumption that owner of vehicle was driver and
that driver was responsible for litter); MCLA 750.535; MSA 28.803
(presumption that one who acquires stolen goods for less than 50% of
value knew them to be stolen); MCLA 750.36; MSA 28.225 (presump-
tion of holding oneself out as specialist in diseases of sexual organs by
use of words "lost manhood" or "lost vitality or vigor" in advertise-
ment); MCLA 312.13; MSA 13.1343 (possession of carcass of protected
animal prima facie evidence that animal killed illegally); MCLA
750.306; MSA 28.538 (possession of gambling slips prima facie evi-
dence of their use in gambling).

trolled substance *is* compelling in a way that is crucial for Fifth Amendment purposes: in practical effect, the presumption will coerce the jury into drawing the inference. The presumption will have become conclusive.

Conclusive presumptions are absolutely forbidden in criminal prosecutions.[10] In the words of Justice NORTH, dissenting in *People v Licavoli:*

"It must be conceded that if the statute 'prescribes a rule of conclusive evidence' in criminal cases, it is invalid * * * . If the words *'prima facie* evidence,' as used in the statutory provision involved in the instant prosecution were to be so construed, I would be disposed to agree that it violated defendants' constitutional right to a trial by jury, and that they were thus deprived of liberty without due process of law." *People v Licavoli,* 264 Mich 643, 660–661; 250 NW 520 (1933).

The presumption need not be labeled "conclusive" to run afoul of constitutional principles:

" 'A law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law.' " *Board of Commissioners of Excise of the City*

---

[10] *See United States v Gainey,* 380 US 63, 70; 85 S Ct 754, 759; 13 L Ed 2d 658, 664 (1965); *Manley v Georgia,* 279 US 1; 49 S Ct 215; 73 L Ed 575 (1929); *Luria v United States,* 231 US 9, 25; 34 S Ct 10, 14; 58 L Ed 101, 106 (1913). *See, also,* McCormick, Evidence, § 346, p 831; FR Ev (RD 1971), 303, Advisory Committee's Note; Case Notes, 2 St Mary's LJ 115–118 (1970) (author lists state cases involving rulings on the validity of presumptions. In no case was the presumption given more than a permissive effect).

Recent United States Supreme Court decisions have uniformly condemned the use of conclusive presumptions in varying contexts. *See Cleveland Board of Education v LaFleur,* 414 US 632; 94 S Ct 791; 39 L Ed 2d 52 (1974); *Vlandis v Kline,* 412 US 441; 93 S Ct 2230; 37 L Ed 2d 63 (1973); *US Department of Agriculture v Murry,* 413 US 508; 93 S Ct 2832; 37 L Ed 2d 767 (1973); *Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1971); *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971); *Carrington v Rash,* 380 US 89; 85 S Ct 775; 13 L Ed 2d 675 (1965).

*of Auburn v Merchant,* 103 NY 143; 8 NE 484; 57 Am Rep 705 (1886), quoted in *People v Kayne, supra,* at 583–584. (Emphasis supplied.)

We remain unconvinced by the contention that in facing a presumption of the type under consideration defendants are no more compelled to testify than they are when confronted with overwhelming prosecution evidence. Admittedly, the force of circumstances often constrains a defendant to testify in order to avoid adverse inferences. And when a defendant is forced to testify because of a strong prosecution case, his Fifth Amendment rights are not violated. However, here the Legislature has inserted itself into the inference-drawing process. The presumption applies regardless of the persuasive force of the natural facts and circumstances. A very real danger exists that an inference, wholly unjustified by the natural facts, will be forced upon the jury by the strength of the presumption alone. It is in this way that prosecutions based on legislatively-enacted presumptions differ from prosecutions based on natural inferences. The quite unobjectionable compulsion to testify arising from natural facts and inferences becomes objectionable when created by a presumption because in creating the presumption the state interferes, in a potentially misleading and unfair manner, with the jury's role as trier of fact. The state compels defendants to testify by telling them, in effect, that if they don't the jury will be told to convict them, even if conviction would be totally unwarranted without the presumption.

The defendants need not risk conviction on the basis of an inference which has been statutorily inflated. Their right to remain silent cannot be burdened by a statute which tells the jury something it already should know and in so doing

indirectly comments on the defendants' failure to testify.[11] The only way for defendants to avoid the risk of conviction by presumption is to testify. The jury, though not straight-jacketed by a conclusive presumption, is nevertheless forcefully propelled to the conclusion urged on it by the Legislature, as implemented in the solemn instructions of the trial judge. Such devices cannot be condoned if the privilege against self-incrimination is to remain meaningful.

Denying the prosecutor the use of this evidentiary crutch should not impede appropriate prosecutions. The substantive crime remains available. Prosecutions involving large amounts of marijuana will not require a presumption to convince a jury that the possessor intended something other than personal use; the inference may follow of its own force. When smaller amounts are at issue, the prosecutor can introduce evidence of the kind he suggests the defendant should be forced to use: expert witnesses and acquaintances of the defendant. The jury will then be left, unfettered by presumptions of any kind, to weigh the evidence on both sides and resolve the question before it.

The judiciary gives great deference to enactments of the state Legislature. In reference to the responsibility of the courts to declare a statute unconstitutional, Judge, now Justice, FITZGERALD of this Court wrote:

"In forming our judgment, we bear in mind the norms governing the review of legislative enactments, norms expressed well by Justice BUTZEL in *Township of Dearborn v Dearborn Township Clerk,* 334 Mich 673; 55 NW2d 201 (1952).

" 'We are mindful of the restrictions upon the power of this Court to declare a challenged statute in conflict

---

[11] *Cf. Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965).

with our Constitution. It is too well settled to require citation that a statute must be treated with the deference due to a deliberate action of a co-ordinate branch of our State government. If the legislature enacted a statute which does not violate the provisions of the Constitution, this Court may not inquire into the wisdom of the legislation or substitute its judgment for that of the legislature. *The conflict between the statute and constitutional provisions must be clear and inevitable before we strike down a statute as unconstitutional.'* 334 Mich 673, 680." *People v Barber,* 14 Mich App 395, 400; 165 NW2d 608 (1968). (Emphasis added.)

We are constrained to conclude that the statutory provision in question is in clear conflict with the constitutional protection against self-incrimination. We recognize and support the Legislature's legitimate concern with the control of harmful drugs. However, constitutional rights cannot take a back seat to legislative programs. Our role as guardians of the Constitution requires us to prevent the erosion of constitutional rights. Our part in the constitutional system of checks and balances would be undermined if we were to ignore the destructive effect this provision has on Fifth Amendment rights.

In this connection the following warning from the late Justice Hugo L. Black of the United States Supreme Court should be heeded. Dissenting in *Turner v United States,* 396 US 398; 90 S Ct 642; 24 L Ed 2d 610 (1970), that eminent jurist wrote:

"Commercial traffic in deadly mind-, soul-, and body-destroying drugs is beyond doubt one of the greatest evils of our time. It cripples intellects, dwarfs bodies, paralyzes the progress of a substantial segment of our society, and frequently makes hopeless and sometimes violent and murderous criminals of persons of all ages who become its victims. Such consequences call for the

most vigorous laws to suppress the traffic as well as the most powerful efforts to put these vigorous laws into effect. Unfortunately, grave evils such as the narcotics traffic can too easily cause threats to our basic liberties by making attractive the adoption of constitutionally forbidden shortcuts that might suppress and blot out more quickly the unpopular and dangerous conduct." *Turner, supra,* at 426–427.

There is another, equally persuasive, reason for concluding that MCLA 335.341(2); MSA 18.1070(41)(2) (the two-ounce presumption rule) is unconstitutional.[12] The statute violates the due process clause of the Fourteenth Amendment.

The United States Supreme Court in *United States v Romano,* 382 US 136, 139; 86 S Ct 279; 15 L Ed 2d 210 (1956), announced the test to be applied where statutory presumptions are at issue. The Court stated:

"The test to be applied to the kind of statutory inference involved in this criminal case is not in dispute. In *Tot v United States,* 319 US 463, 63 S Ct 1241, 87 L Ed 1519 [1943], the Court, relying on a line of cases dating from 1910, reaffirmed the limits which the Fifth and Fourteenth Amendments place 'upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated.' Id., at 467; 63 S Ct, at 1245; 87 L Ed, at 1524. Such a legislative determination would not be sustained if there was 'no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * [W]here the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the

_____

[12] It is not uncommon for our courts to base a decision on more than one ground. *See, e.g., People v Atley,* 392 Mich 298; 220 NW2d 465 (1974); *Stanley v Illinois, supra.*

legislature to create it as a rule governing the proce-
dure of courts.'" 382 US at 139; 86 S Ct at 281; 5 L Ed
2d at 213.

The degree of certainty necessary to sustain the
presumed fact based on a statutory presumption
has not been firmly settled by the United States or
Michigan Supreme Courts. However, in the instant
case, whether the presumption is judged by the
"more-likely-than-not standard" applied in *Leary v
United States*,[13] or by the "beyond a reasonable
doubt" standard applied in *Turner v United
States, supra,* the two-ounce rule does not pass
muster.

Judged by the above standards, the statutory
presumption that possession of more than two
ounces of marijuana creates a prima facie case of
possession with intent to deliver is constitutionally
infirm.

Following the reasoning in *Turner, supra, Leary,
supra,* and *Romano, supra,* MCLA 335.341(2); MSA
18.1070(41)(2), is infirm in that there is no rational
connection between the proven fact (possession of
two ounces of marijuana) and the presumed fact
(intent to deliver) in light of today's "common
experience".

The learned trial judge overturned the statute
in question only reluctantly, after careful delibera-
tion. Our treatment of the issue has been as
cautious and exacting as his.

However, lest we be misunderstood, we empha-
size that we are not here passing on the constitu-
tionality of any other presumption. We expressly
limit our holding to the instant facts. Whether the
foregoing analysis will find application elsewhere
must abide a case-by-case approach.

---

[13] 395 US 6; 89 S Ct 1532; 23 L Ed 2d 57 (1969).

For the above-stated reasons, we conclude that 1) the two-ounce presumption section of the Controlled Substances Act of 1971 (MCLA 335.341[2]; MSA 18.1070[41][2]) impermissibly compels a defendant to take the stand in violation of his right against self-incrimination granted by both the Fifth Amendment of the United States Constitution and article 1, § 17 of the Michigan Constitution of 1963 and 2) the two-ounce presumption section violates the due process clause of the Fourteenth Amendment of the United States Constitution.

The decision of the Circuit Court for the County of Macomb is hereby affirmed.

All concurred.