## PEOPLE v GALLAGHER

### OPINION OF THE COURT

1. APPEAL AND ERROR—FAILURE TO SUPPORT AN ISSUE—ABANDON-
   MENT OF AN ISSUE.

   The Court of Appeals will not discuss an issue where a party has
   failed to brief, present authority, or present policy reasons in
   substantiation of the issue; failure to support an issue raised on
   appeal constitutes abandonment of that issue.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—STATUTES—REBUTTABLE
   PRESUMPTIONS—STATE OF MIND—PRIVILEGE AGAINST SELF-IN-
   CRIMINATION.

   A statutory rebuttable presumption that any dealer in any mer-
   chandise or personal property, who fails to make a reasonable
   inquiry whether the person selling or delivering stolen property
   to him has a legal right to do so or who buys or receives such
   property with altered or obliterated identification numbers on
   any external surface, buys or receives such property knowing it
   to have been stolen, is not a violation of the defendant's
   privilege against self-incrimination since there are means of
   rebutting such state-of-mind presumptions other than by the
   defendant taking the witness stand, although the other means
   may not be as effective; different constitutional treatment for
   state-of-mind presumptions based on the distinction that state-
   of-mind presumptions can be effectively rebutted only by a
   defendant's own testimony while fact presumptions can be
   effectively rebutted by other types of evidence is unwarranted.

3. COURTS—COURT OF APPEALS—SUPREME COURT.

   The Court of Appeals is an intermediate appellate court and as
   such it is bound by the pronouncements of the Supreme Court.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 686.
[2, 4] 21 Am Jur 2d, Criminal Law §§ 349, 353.
[3] 4 Am Jur 2d, Appeal and Error § 3 *et seq.*
[5] 75 Am Jur 2d, Trial §§ 211–314.
[6] 21 Am Jur 2d, Criminal Law § 96.

4. Criminal Law—Constitutional Law—Privilege Against Self-Incrimination—Rebuttable Presumption—Jury Instructions.

A defendant's privilege against self-incrimination was not violated by instructions given to the jury which included a reading of a criminal statute containing a rebuttable presumption as to the defendant's knowing, under certain circumstances, that certain property was stolen, although the trial court should have given clearer instructions regarding presumptions, where the statute and its contained presumption have been found constitutional and where any inadequacies contained in the language of the statute were sufficiently remedied by the trial court's subsequent detailed instructions concerning the burden of proof, the presumption of innocence and the defendant's right not to testify in his own behalf.

5. Criminal Law—Closing Arguments—Uncontradicted Facts—Rebuttable Presumptions.

A prosecutor may, in his closing arguments, comment to the jury to the effect that the facts shown were uncontradicted, and a prosecutor's reference to a presumption does not constitute unfair comment on the defendant's failure to take the stand; a defendant cannot complain if the jury is made aware of the existence of a presumption.

Concurrence by Bashara, J.

6. Criminal Law—Case Precedent—Differing Facts.

*A prior case which stressed that it clearly applied only to the facts of that case should not be used as precedent for a case where the facts are different.*

Appeal from Wayne, George Wicklund, J. Submitted January 14, 1976, at Detroit. (Docket No. 22006.) Decided March 23, 1976. Leave to appeal applied for.

Defendant was convicted of receiving and concealing stolen property. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal

Attorney, Research, Training and Appeals and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Towner, Rosin, York & McNamara,* for defendant.

Before: McGREGOR, P. J., and BASHARA and ALLEN, JJ.

McGREGOR, P. J. Defendant, Raymond Gallagher, was convicted by a jury of the offense of receiving and concealing stolen property (MCLA 750.535; MSA 28.803), and subsequently sentenced to a term of 1 to 5 years in prison. He now appeals as a matter of right.

On June 3, 1973, two Southgate police officers stopped the defendant while he was towing a late model Cadillac southbound on I-75. The Cadillac initially attracted the officers' attention because, although it appeared to be in good condition, most of its exterior sheet metal had been removed. After stopping the defendant, the officers further observed that the vehicle identification number had been removed from the dash assembly. The officers then asked the defendant to produce proof of ownership or a bill of sale, but he was unable to do so. As a result, defendant was arrested and charged with receiving and concealing stolen property.

At trial, the prosecution presented evidence which showed that the Cadillac had been stolen on May 19, 1973, approximately two weeks before the defendant's arrest. The people's evidence also tended to show that the defendant was in the business of salvaging and rebuilding automobiles, and that he had been so employed for at least several years prior to the offense.

The defendant first contends that MCLA
750.535; MSA 28.803, the statute under which he
was convicted, is unconstitutional in that it vio-
lates defendant's privilege against self-incrimina-
tion.[1] Section 2 of that act provides:

"(2) *Any person being a dealer in or collector of any
merchandise or personal property,* or the agent, em-
ployee, or representative of a dealer or collector who
fails to make reasonable inquiry that the person selling
or delivering any stolen, embezzled, or converted prop-
erty to him has a legal right to do so, or *who buys or
receives any such property which has a registration,
serial, or other identifying number altered or obliter-
ated on any external surface thereof, shall be presumed
to have bought or received such property knowing it to
have been stolen, embezzled, or converted. This pre-
sumption may be rebutted by proof."* (Emphasis added.)

The defendant, in arguing that this section vio-
lates his privilege against self-incrimination, relies
primarily upon our Court's decision in *People v
Serra,* 55 Mich App 514; 223 NW2d 28 (1974). In
*Serra,* the Court stated:

"But the presumption in this case is unique in that
the actual state of mind of the accused is involved.

"Most presumptions which have been considered by
courts have involved inferences from one fact about a
certain object or relation to another, more remote, *fact
about that same object or relation.* For example, in
*People v Kayne,* 286 Mich 571; 282 NW 248 (1938), the

---

[1] Defendant also argues that the statute is unconstitutional on 14th
Amendment grounds. However, defendant fails to argue the issue at
all in the body of his brief or to present any authority. It is well
settled that this Court will not discuss an issue where a party has
failed to brief, present authority, or present policy reasons in substan-
tiation of the issue. Failure to support the issue raised constitutes
abandonment. *See People v St. Onge,* 63 Mich App 16; 233 NW2d 874
(1975).

Supreme Court sustained a presumption written into a local ordinance. It provided that display of a registration plate on a motor vehicle parked illegally constituted prima facie evidence that the owner of the vehicle parked it. The Court held that such a presumption did not violate the defendant's privilege against self-incrimination. The presumption in *Kayne* involved an inference from one fact about the car (that it had a certain registration number) to another fact about the car (that its owner parked it illegally). Significantly, the presumption in *Kayne* did *not* involve an inference from a fact about the car to a fact about the owner's *intent* (e.g., that he intended to park it illegally).

"It is this feature of the presumption in question which requires us to give it different treatment. It involves an inference from the fact of possession to the fact of the possessors' *intent,* rather than some fact which can be shown independent of the defendants' state of mind. The only evidence which can effectively rebut such an inference, supported and enhanced by the presumption, is the defendants' own testimony as to their intent. Any other evidence, even expert testimony, is mere speculation about that intent. Probabilities established by an expert are only suggestions.

"We are not persuaded by the argument that the defendants can choose not to take the stand to testify. The choice offered defendants is an empty one. It has been nullified by the heavy hand of a Legislature which imposes a penalty, in the form of a statutory presumption on those who decide to exercise their constitutional right to remain silent."

Although the *Serra* court specifically limited its holding to the facts before it and declined to extend the above analysis to similar presumptions, we cannot conceive of any rational basis upon which the presumption in the present case can be meaningfully distinguished from the presumption present in *Serra.* Both involve an inference from the fact of possession to the accused's state of

mind,[2] and both inevitably have the same effect on the defendant's decision to remain silent and on the jury's verdict when the defendant does not take the stand.

The plaintiff concedes as much, but argues that the self-incrimination issue raised in *Serra* was wrongly decided and that its rationale should be abandoned. Reluctantly, we are constrained to agree.[3]

While we can see the distinction between those presumptions which infer an actor's state of mind and those which merely infer some other fact, we cannot, however, perceive any difference which would make the former unconstitutional but not the latter. The *Serra* court distinguished "state of mind" presumptions from other presumptions on the basis that a mental state can be effectively rebutted only by the defendant's own testimony, while the other presumptions can be effectively rebutted by other types of evidence. Different constitutional treatment of presumptions based on this distinction, we believe, is unwarranted.

First of all, there are essentially two ways to rebut any presumption, be it a "state of mind" or a "fact" presumption. The most effective way is to offer evidence which undermines the basic facts upon which the presumption is based. Thus, under the statute before us, a defendant could, even without taking the stand, offer evidence which showed either (1) that he was not a dealer or

[2] Although *Serra* was concerned with the accused's intent while the present case is concerned with the accused's knowledge, both presumptions deal directly with proving the requisite mental state that the accused must possess in order to be convicted of the crime. As such, *Serra* should not be distinguishable on this ground.

[3] Plaintiff does not quarrel with the *Serra* court's analysis of the due process issue therein raised. Neither do we. As a result, we do not upset the *Serra* Court's holding that the 2-ounce presumption was unconstitutional on 14th Amendment grounds.

collector of the property in question, (2) that the property was not stolen property, (3) that he did not buy or receive such property, (4) that the property in question has no serial number on any external surface, or (5) that the serial number was not altered or obliterated. If evidence is presented by the defendant which would show any of the above, the presumption could effectively be rebutted.

The other method of rebutting the presumption is to show that although the basic facts necessary for its application are present, the jury should nevertheless not make the inference that the presumption allows in the case before them. Thus, under the statute present in the instant case, the defendant could also show, again without taking the stand, (1) that the property in question does not normally have a serial number, (2) that the property in question is usually bought and sold second-hand, with the serial numbers altered or obliterated, (3) that there were other serial numbers plainly visible on the external surfaces which were not altered or obliterated, (4) that the defendant has interposed a valid defense such as intoxication or incapacity, or (5) that the defendant had no knowledge that the property in question was marked with a serial number or that the serial number was altered or obliterated. Again, if any of the above were shown, the presumption would be effectively rebutted.

Although several of these rebuttal methods, particularly the last, could certainly be better presented if the defendant himself took the stand, all nevertheless are susceptible to being shown by other types of evidence. In this respect, "state of mind" presumptions do not differ significantly from "fact" presumptions. For example, the pre-

sumption in *People v Kayne,* 286 Mich 571; 282
NW 248 (1938), which makes display of a registra-
tion plate on a motor vehicle parked illegally
prima facie evidence that the owner of the vehicle
parked it, can clearly be more effectively rebutted
if the owner of a vehicle takes the stand and
testifies than if he attempts to rebut the presump-
tion by relying solely on other proof. Consequently,
there would be the same kind of pressure put on
the defendant to testify when faced with a "fact"
presumption as there is when he is faced with a
"state of mind" presumption. Since the difference,
if any, is only one of degree, we cannot see how
this distinction can furnish the basis for holding
one unconstitutional but not the other.

Furthermore, the *Serra* opinion assumes that
the defendant faced with a "fact" presumption can
always offer other types of evidence and therefore
avoid having to take the stand himself to rebut the
presumption. However, in many cases, such a
defendant will not have the other types of evi-
dence available to him and, consequently, he will
usually have to take the stand to effectively rebut
the presumption. Again, using the *Kayne* pre-
sumption as an example, it is evident that in some
if not most cases, the defendant will have no
method of evidence available to him other than
taking the stand himself and denying that he
parked his vehicle in the illegal spot. Under these
circumstances, the compulsion to testify would be
as great, if not greater, than if the defendant had
been faced with a "state of mind" presumption.
This would certainly be the case where the defend-
ant has other types of evidence available to him
which would tend to rebut the "state of mind"
presumption. Factors such as these further illus-
trate that the test of constitutionality cannot be

predicated upon the "state of mind—fact" distinction advanced in *Serra.*

Moreover, the United States Supreme Court has on several occasions held that "state of mind" presumptions do not infringe on an accused's privilege against self-incrimination. In *Yee Hem v United States,* 268 US 178; 45 S Ct 470; 69 L Ed 904 (1925), the Court held that a statutory provision, which provided that possession of opium is presumptive evidence of an intention unlawfully to conceal it with knowledge of its unlawful importation, does not unconstitutionally require the defendant to be a witness against himself. There, it was stated:

> "The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution." 268 US at 185.

In *Turner v United States,* 396 US 398; 90 S Ct 642; 24 L Ed 2d 610 (1970), the Court upheld the constitutionality of instructing the jury that it

may infer from possession of heroin that the defendant knew that it had been illegally imported. Likewise, in *Barnes v United States,* 412 US 837; 93 S Ct 2357; 37 L Ed 2d 380 (1973), the Court upheld the constitutionality of an instruction which told the jury that they could infer from the unexplained possession of recently stolen mail that the defendant possessed the mail with the knowledge that it was stolen. There, the Court stated at pp 846–847:

"Petitioner also argues that the permissive inference in question infringes his privilege against self-incrimination. The Court has twice rejected this argument, *Turner v United States,* 396 US at 417–418 [90 S Ct 642; 24 L Ed 2d 610 (1970)]; *Yee Hem v United States,* 268 US 178, 185; 45 S Ct 470; 69 L Ed 2d 904 (1925), and we find no reason to re-examine the issue at length. The trial court specifically instructed the jury that petitioner had a constitutional right not to take the witness stand and that possession could be satisfactorily explained by evidence independent of petitioner's testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. *Yee Hem v United States, supra,* at 185."

While it is true that Michigan courts can impose stricter constitutional standards than does the United States Supreme Court, our above analysis convinces us that the "state of mind—fact" distinction set forth in *Serra* does not provide a logical basis upon which to impose stricter standards against self-incrimination. In fact, the only rational method we can see which would provide such stricter standards would be the complete elimination of *all* presumptions. This method has

been suggested and deserves serious consideration. See *Turner v United States, supra,* (dissenting opinion). However, being an intermediate appellate court, we are bound by the pronouncements of our Supreme Court. Since our Supreme Court has held, in *People v Kayne, supra,* that presumptions do not violate a defendant's privilege against self-incrimination, we cannot hold otherwise. We, therefore, reject defendant's contention that MCLA 750.535(2), is unconstitutional as being violative of defendant's privilege against self-incrimination.

The defendant's two remaining assignments of error are but extensions of the first. He claims that the trial court's reading of the above quoted statute to the jury and the prosecutor's reference in closing argument to the presumption contained therein both operated to deprive him of the effective implementation of his privilege against self-incrimination. We disagree.

While the trial court should more properly have given the jury a clearer instruction concerning presumption than that which a reading of the statute provided, we hold, based on our previous discussion, that the reading of the statute did not result in reversible error. Since we have held the statute to be constitutional, the defendant cannot complain if the jury is made aware of the presumption contained therein. Furthermore, any inadequacies contained in the language of the statute were sufficiently remedied by the trial court's subsequent detailed instructions concerning the burden of proof, the presumption of innocence, and the defendant's right not to testify on his own behalf. Thus, we conclude that the instruction given did not violate the defendant's privilege against self-incrimination.

Likewise, we also hold that the prosecutor's reference to the presumption did not constitute unfair comment on the defendant's failure to take the stand. The prosecutor was arguing basically that, since there was no evidence presented to rebut the presumption, the jury should apply the presumption in determining the defendant's guilt. As noted above, the defendant cannot complain if the jury is made aware of the existence of the presumption. Moreover, a prosecutor can in his closing argument comment to the jury to the effect that the facts shown were uncontradicted. See *People v Jacoboni,* 34 Mich App 84; 190 NW2d 720 (1971). Consequently, we can find no reversible error resulting from the prosecutor's closing argument in the instant case.

Affirmed.

ALLEN, J., concurred.

BASHARA, J. *(concurring).* Judge McGREGOR has written an excellent opinion for this panel with which I concur. However, I feel constrained to make special comment because of having joined in the opinion in *People v Serra,* 55 Mich App 514; 223 NW2d 28 (1974).

Upon reflection the self-incrimination analysis in *Serra* may have been an improper standard. However, it should be pointed out that I consider the *Serra* decision to be primarily based on the "rational relationship" test in the light of common experience. The test is whether in common experience the possession of two ounces of marijuana is rationally related to the intent to deliver.

It should be further stressed that *Serra* very clearly applied only to the facts of that case.