PEOPLE v CAMPBELL

Docket No. 52861. Submitted June 4, 1981, at Detroit.—Decided April 21, 1982.

Jon Campbell was convicted in Washtenaw Circuit Court, Henry T. Conlin, J., on his plea of guilty of possession of 50 to 225 grams of a mixture containing cocaine and was sentenced to lifetime probation. Defendant appeals, raising various constitutional challenges to the statutory provisions under which he was found guilty and sentenced. *Held:*

1. The controlled substances provisions of the Public Health Code are not violative of the title-object clause of the Michigan Constitution.

2. The classification scheme in the Public Health Code whereby the severity of the crime is based on the weight of a mixture containing a controlled substance rather than on the weight of the pure substance is related to the object of the legislation and is not violative of equal protection.

3. While the classification scheme in the Public Health Code whereby the penalties for possession of 50 grams of a mixture containing cocaine is identical to the penalties for the delivery, manufacture or possession with intent to deliver of a like amount of the same substance may not be the best statutory scheme, the scheme adopted by the Legislature cannot be said to be violative of equal protection or due process. Any statutory presumption inherent in this statutory scheme is constitutionally valid.

4. The fact that possession of cocaine is treated as severely as possession of heroin, while unusual and insensible, does not make the penalties set under the statutory scheme adopted by

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.
   73 Am Jur 2d, Statutes §§ 99, 100.
[2-4] 16A Am Jur 2d, Constitutional Law § 735 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 539.
[5] 21 Am Jur 2d, Criminal Law § 627.
   Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.

the Legislature violative of the constitutional prohibition against cruel and unusual punishment.

5. A sentence of lifetime probation is not violative of the constitutional prohibition against cruel and unusual punishment.

Affirmed.

1. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
TIONAL LAW — TITLE-OBJECT CLAUSE.

The controlled substances provisions of the Public Health Code do not violate the title-object clause of the Michigan Constitution (Const 1963, art 4, § 24; MCL 333.7403; MSA 14.15[7403]).

2. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
TIONAL LAW — EQUAL PROTECTION.

The classification scheme contained in the controlled substances provisions of the Public Health Code whereby the severity of the crime is based upon the weight of a mixture containing a controlled substance rather than on the weight of the pure substance contained in the mixture is related to the object of the legislation and is not violative of equal protection (MCL 333.7403; MSA 14.15[7403]).

3. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
TIONAL LAW — EQUAL PROTECTION — DUE PROCESS.

The classification scheme contained in the controlled substances provisions of the Public Health Code whereby the penalties for possession of 50 grams of a mixture of a schedule 1 or 2 controlled substance are identical to those provided for the delivery, manufacture or possession with intent to deliver such a mixture is not violative of equal protection or due process; any statutory presumption inherent in the statutory scheme is constitutionally valid (MCL 333.1401[2][a][iii], 333.7403[2][a][iii]; MSA 14.15[7401][2][a][iii], 14.15[7403][2][a][iii]).

4. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
TIONAL LAW — CRUEL AND UNUSUAL PUNISHMENT.

The classification scheme contained in the controlled substances provisions of the Public Health Code whereby possession of cocaine is treated as severely as possession of heroin, while unusual and insensible, does not violate the constitutional prohibition against cruel and unusual punishment (Const 1963, art 1, § 16; MCL 333.7403[2][a]; MSA 14.15[7403][2][a]).

5. CRIMINAL LAW — SENTENCES — LIFETIME PROBATION — CONSTITU-
TIONAL LAW — CRUEL AND UNUSUAL PUNISHMENT.

A sentence of lifetime probation is not violative of the constitutional prohibition against cruel and unusual punishment.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*James C. Thomas,* for defendant.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

BRONSON, P.J. Defendant was convicted on his plea of guilty of possession of 50 to 225 grams of a mixture containing cocaine. MCL 333.7403(2)(a)(iii); MSA 14.15(7403)(2)(a)(iii). He was sentenced to lifetime probation and now appeals as of right, raising various constitutional challenges to the statutory provisions under which he was found guilty and sentenced.

Defendant first contends that the controlled substances prohibitions embodied in the Public Health Code are violative of Michigan's constitutional provision mandating that "[n]o law shall embrace more than one object, which shall be expressed in its title". Const 1963, art 4, § 24. We disagree. *People v Trupiano,* 97 Mich App 416, 420; 296 NW2d 49 (1980), *lv den* 409 Mich 895 (1980), *People v Franklin,* 102 Mich App 591, 593; 302 NW2d 246 (1980), *People v Lemble,* 103 Mich App 220, 222; 303 NW2d 191 (1981).

Defendant arguably lacks standing to raise his remaining challenges to the statutory scheme. However, since the lower court record received by this Court did not include the transcript of the plea-taking proceeding, we are unable to ascertain under what conditions the plea was entered. For this reason, and because the prosecution does not

---

* Circuit judge, sitting on the Court of Appeals by assignment.

argue that defendant lacks standing, we will address these issues on their merit.

Defendant asserts that the criminal classification scheme of the act, which determines the severity of the crime solely by the weight of the mixture which includes the substance and not the substance's purity, offends constitutional guarantees of equal protection of the law. Defendant correctly notes that a person convicted of possessing 51 grams of a mixture containing 15% cocaine will be treated far more severely than a person convicted of possessing 49.9 grams of pure cocaine. While we believe the Legislature has adopted bad policy by basing punishment on the weight of the mixture instead of the weight of the pure illegal substance, we ultimately do not believe the classification denies equal protection of the law. We believe, however, that the rationale used in upholding the classification scheme in *People v Lemble,* 103 Mich App 220, 222-223; 303 NW2d 191 (1981), is incomplete. There, this Court reasoned that the greater the quantity of the mixture, regardless of purity, the greater was the potential harm to society since illegal substances are generally sold by weight and not purity. We believe, however, that the possessor of a large quantity of a pure controlled substance is far more likely to be a major trafficker in drugs than one in possession of an illegal substance whose purity has been substantially "cut" with some other agent. Most likely a person in possession of 49.9 grams of a pure controlled substance is going to sell it to street dealers who will "cut" it prior to resale (or, alternatively, the possessor of the pure substance intends to cut it himself prior to resale).[1] Essen-

---

[1] The lesser the quantity of a pure controlled substance the more sense the *Lemble* rationale makes. For instance, it is possible to believe that a person in possession of eight or ten grams of pure

tially, we believe the statute has the effect of treating street dealers in controlled substances, who are possibly supporting their own addiction in the case of heroin sellers, the same as (or occasionally more harshly than) real drug traffickers. Although we question the policy implications of this legislative decision, we do not consider it irrational. Street dealers need a source of supply to engage in the illegal sales, but it is equally true that major traffickers need a network of distributors to sell the controlled substance. Thus, it is rational to impose the stiff penalties for possession by mixture because it would tend to deter the ability of traffickers to find street peddlers willing to risk the possession of large, but cut, amounts of an illegal substance. Additionally, the small street vendor of illegal substances tends to attract unsavory elements to a neighborhood or area the way that a major dealer does not. Due to the prohibition on controlled substances, and we do not imply that controlled substances should be legalized, the cost of these drugs is high. Consequently, where small street vendors dealing drugs go, increased problems with crime against area residents generally follow. While, obviously, the major trafficker is ultimately the cause of this crime, his presence in an area does not have the same sort of direct adverse consequences on the local citizenry. Thus, an argument can be made that street pushers are at least as harmful as dealers. No fundamental right is involved here and we conclude that the

cocaine intends it for personal consumption. However, a person possessing 51 grams of a mixture including cocaine which is 15 or 20% pure is most probably not possessing the substance just for personal use. In this situation, then, the possessor of the mixture is truly more likely to pose a greater threat to society than the possessor of the pure cocaine. However, as the quantity of pure cocaine possessed increases, it becomes less and less believable that it is not going to be cut and is not intended for further sales.

classification scheme is reasonably related to the object of the legislation. See *People v Schmidt,* 86 Mich App 574, 578, fn 3; 272 NW2d 732 (1978), *lv den* 406 Mich 881 (1979).

Defendant also asserts that MCL 333.7403; MSA 14.15(7403) unconstitutionally deprives him of equal protection and due process of law by conclusively presuming that a person who possesses 50 or more grams of a mixture containing a schedule 1 or 2 controlled substance intends to deliver it. MCL 333.7401(2); MSA 14.15(7401)(2), which pertains to unlawful manufacture, delivery, or possession with intent to deliver, provides for penalties identical to those provided for simple possession where 50 or more grams of a mixture containing the controlled substance are involved. Moreover, under MCL 333.7401(3); MSA 14.15(7401)(3), a person who possesses, possesses with intent to deliver, delivers, or manufactures 50 or more grams of a mixture containing a controlled substance must serve his sentence consecutively with any term imposed for the commission of another felony. Furthermore, this provision removes parole or probation eligibility during the mandatory term except to the extent that lifetime probation is an option.

Defendant relies on *People v Serra,* 55 Mich App 514; 223 NW2d 28 (1974), for the proposition that the statutory scheme under consideration here improperly imposes a conclusive presumption that possession of 50 grams of a mixture containing a controlled substance equates to an intent to deliver. *Serra* involved the constitutionality of a provision in the Controlled Substances Act of 1971 mandating that possession of two or more ounces of marijuana was prima facie evidence of an intent to deliver. In *Serra,* we agreed with the lower

court that the presumption was unconstitutional. Our holding rested on two independent grounds: (1) that the presumption impermissibly compelled a defendant to testify to rebut the presumption and (2) that the presumption was not rationally related to common experience. The first basis of our holding in *Serra* was specifically overruled by the Supreme Court in *People v Gallagher,* 404 Mich 429, 437; 273 NW2d 440 (1979). Consequently, the validity of the presumption in this case will only be considered under the second rationale set forth in *Serra.*

In *People v Dorris,* 95 Mich App 760, 765; 291 NW2d 196 (1980), *lv den* 409 Mich 910 (1980), this Court stated:

"Legislative presumptions are valid so long as there is a rational connection between the proven facts and the fact to be presumed. *People v Gallagher,* 404 Mich 429; 273 NW2d 440 (1979), *People v John E Moore,* 78 Mich App 565; 261 NW2d 3 (1977), *aff'd* 402 Mich 538; 266 NW2d 145 (1978). If the presumed fact is more likely than not to flow from the proven fact, the presumption is constitutionally valid. *People v Gallagher, supra.*"

In the instant case the presumed fact (intent to deliver) is more likely than not to flow from the proven fact (possession of a mixture of 50 or more grams containing a controlled substance). Thus, if any presumption is operative here it is valid.

In fact, it is perhaps more accurate to state that a legislative presumption is not operative in the statute. Instead, the Legislature has simply determined that where one is convicted of possession of 50 or more grams of a mixture containing a schedule 1 or 2 controlled substance, the punishment should be identical to that imposed where manu-

facture, delivery, or intent to deliver is also proven. This is not a case, then, where one offense with a lesser punishment is elevated to a different offense with a more severe punishment by operation of some legislative presumption. The Legislature probably provided for the same penalties in MCL 333.7403; MSA 14.15(7403), and MCL 333.7401; MSA 14.15(7401), where more than 50 grams of a mixture is involved, because it believed one in possession of this amount of a mixture most likely possesses an intent to deliver. However, we do not believe that this fact poses any constitutional impediment to the enforcement of the legislation. In our opinion, the Legislature could rationally conclude that the same penalties should be imposed for possession, possession with intent to deliver, delivery, and manufacture where the amount of the weighed substance exceeds 50 grams. While we may believe better policy would be to differentiate penalties, there is no fundamental right to possess controlled substances and the classification of penalties is reasonably related to the object of the legislation (the eradication of illegal drug use in our society).

Defendant lastly contends that the penalty provisions for possession of cocaine are disproportionate to the crime and constitute cruel or unusual punishment. Const 1963, art 1, § 16. We fully agree with defendant that the statutory provisions in question are unusual.[2] We do not see much in the penalty scheme to recommend it. A trial court, without regard to the personal characteristics of the offender, must either impose a minimum sentence of 10 years imprisonment or sentence him to lifetime probation where he is convicted of possession of a mixture of 50 to 225 grams containing

---

[2] That is, unusual in the restricted sentencing options available to the trial court. The punishment options—imprisonment or probation —are not unusual, as will be further developed below.

cocaine. In many cases we can envision this scheme defeating the notion that the penalty should be individualized to fit the offender. This strikes us an unfortunate since the trial judge is in a position far superior than the Legislature to assess what penalty is best for the offender and society.

The definitive Michigan Supreme Court opinion on cruel or unusual punishment is *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972). The punishment proscribed for possession of 50 to 225 grams of a mixture containing cocaine is arguably unconstitutional under *Lorentzen.* The *Lorentzen* Court compared the sentences for sale of marijuana to other crimes involving the sale of harmful substances and other offenses involving harm to people. The implied underpinning of *Lorentzen* was that the potential harm from the sale of marijuana was out of reasonable proportion to the mandatory 20-year sentence imposed by statute. In *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), the Court explicitly recognized the implication made in *Lorentzen* and concluded that a mandatory minimum sentence of 20 years for sale of heroin was neither unconstitutionally cruel nor unusual, given the social loss and attendant crime occasioned by herion addiction in our society. *Stewart, supra,* 554.

Cocaine is an illegal substance much more like marijuana than heroin. In *People v McCarty,* 93 Ill App 3d 898, 899-900; 418 NE2d 26 (1981), *rev'd* 86 Ill 2d 247; 427 NE2d 147 (1981),[3] the Court noted:

---

[3] In *McCarty,* the Illinois Court of Appeals held that Illinois' scheme of classifying cocaine as a *narcotic drug* was violative of equal protection. Under the Illinois statutory scheme, the severity of punishment for possession of a substance listed within a particular schedule turned on whether that substance was narcotic or nonnar-

"There is no dispute within the scientific community that cocaine is not a narcotic. Cocaine is a stimulant and its physiological effects are to increase the heartbeat and blood pressure with average use. Psychologically, cocaine increases alertness and produces a feeling of pleasure.

"Cocaine is not physically addicting. Drug addiction has two components—tolerance and withdrawal illness. 'Tolerance' means that with continual use, the body requires more of a drug in order to obtain the effect the person is seeking. 'Withdrawal illness' means that when the drug is withdrawn there are unpleasant symptoms such as cramping, nausea, perspiration and chills. Cocaine has neither of these characteristics. Cocaine is not generally harmful to the body, and the effect of the drug is shorter lasting than the effects of caffeine, nicotine or amphetamines.

"There is no causal connection between the ingestion of cocaine and criminal behavior. Psychological dependency can result, but such dependency is mild and less than a person usually develops from tobacco. Cocaine does not create hallucinations, although perceptual distortion occurs with a small number of users. It is the consensus within the scientific and medical community that cocaine is a drug with low abuse potential and not very dangerous.

"Cocaine has currently accepted medical use in this

---

cotic. Thus, possession of cocaine and amphetamines, both schedule 2 substances in Illinois, were treated differently insofar as punishment was concerned because cocaine was misclassified as a narcotic. The Michigan scheme provides identical treatment for a schedule 1 or 2 substance which is a narcotic *or* is described in MCL 333.7214(a)(iv); MSA 14.15(7214)(a)(iv). This section includes cocaine only. Thus, the Michigan statutory scheme evinces a clear legislative intent to treat cocaine as severely as a narcotic drug. Unlike the situation in *McCarty,* however, we are not here presented with a misclassification of cocaine as a narcotic in defiance of medical knowledge. To the extent *McCarty* was concerned with more than a problem of misclassification and can be read as forbidding on equal protection grounds a legislative decision to punish those possessing the nonnarcotic cocaine as harshly as those possessing narcotics we explicitly disagree with its analysis on the constitutional issue. We reiterate, however, that we do not believe the legislative scheme enacted in Michigan is a wise one in this regard. Compare *McCarty* and *State v Erickson,* 574 P2d 1 (Alas, 1978), which upholds the legislative classification of cocaine as a narcotic while noting that pharmacologically it is a nonnarcotic.

country. It is used as a local anesthetic in ear, nose and throat surgery as well as dentistry. It is used clinically for treatment of chronic pain. Cocaine is cleanly metabolized and excreted from the body. The nonmedical use of cocaine does not produce any significant medical problem for the individual user. The consensus is that the risks and dangers of cocaine have been greatly exaggerated. The characteristics of the true narcotics are that they are related to the opium poppy, they are psychoactive depressants and they produce tolerance and withdrawal. But cocaine has none of these attributes."

See, also, Joel Phillips and Ronald Wynne, *Cocaine: The Mystique and the Reality* (Avon Books, 1980).

In view of the current scientific and medical opinion on the abuse potential of cocaine and its effect on society, *Lorentzen* could be applied to hold the penalties in issue unconstitutional. While we find it insensible to punish cocaine and heroin possession with the same severity, other aspects of the *Lorentzen* decision convince us that the punishment scheme enacted in Michigan is not constitutionally defective as cruel or unusual.

Unlike the sentencing scheme declared unconstitutional in *Lorentzen,* the sentencing provisions here are graduated. In *Lorentzen,* the statutory provision in issue required imposition of a 20-year mandatory sentence even if as little as one marijuana cigarette was sold. Here, by way of contrast, the severity of the punishment turns on the weight of the mixture containing the cocaine. Additionally, even where as much as 224.9 grams of cocaine or a mixture containing cocaine is possessed, MCL 333.7403(2); MSA 14.15(7403)(2) allows for a term of probation, albeit for life.

The *Lorentzen* Court also found it significant that only one of the other 49 states had a statute

prohibiting the sale of marijuana which was as severe as Michigan's. However, as regards cocaine, Michigan's penalties are not outside of the mainstream. See, for instance, Ill Ann Stat, ch 56 1/2, § 1402(a) (Smith-Hurd) and 38 Ill Ann Stat, § 1005-8-1(a)(4) (Smith-Hurd) [possession of 30 grams or more of any substance containing cocaine is a class 1 felony for which a prison term of 4 to 15 years may be imposed], NY Penal Law (McKinney) 220.21 and NY Penal Law 70.00(2)(a), 70.00(3)(a)(i) (McKinney) [possession of more than 4 ounces of a narcotic, statutorily defined to include cocaine, Penal Law 220.00(7) (McKinney), is a class A-1 felony carrying a minimum term of imprisonment of 15 to 25 years and a maximum term of life], Cal Penal Code § 11350(a) (West) [simple possession of cocaine carries a 2- to 10-year penalty], Fla Stat Ann 893.13(1)(e) and Fla Stat Ann 775.082(3)(d) [simple possession of any amount of cocaine is a third-degree felony punishable by up to 5 years imprisonment], Vernon's Ann Civ Stat, art 4476-15(4.02)(b)(3)(D), Vernon's Ann Civ Stat, art 4476-15(4.04)(b)(1) and Vernon's Ann Penal Code, art 12.33 (Texas) [simple possession of any amount of cocaine is punishable by term of imprisonment of from 2 to 20 years].[4]

We finally consider whether a term of lifetime probation is constitutionally offensive as cruel or

---

[4] The statutory provisions cited are for possession of cocaine only. The Michigan statute is unusual in that possession of large quantities of a mixture including cocaine carry severe sentences which many other state statutes reserve for possession with intent to deliver or delivery. The practical effect of this distinction is probably minimal since a jury could properly infer an intent to deliver from the large quantities of the mixture possessed. From this perspective it would not be unreasonable to compare penalties imposed in other states for possession with intent to deliver to Michigan's penalties for possession of 50 or more grams of a substance containing cocaine. However, the examples given above involve possessory offenses only without proof of any additional intent.

unusual punishment. We conclude that it is not. Having upheld the statutory scheme insofar as the minimum sentence of 10 years imprisonment for possession of a mixture consisting of 50 to 225 grams and containing cocaine is concerned, we are unable to hold that, in the abstract, the imposition of lifetime probation is unconstitutional.[5] We perceive lifetime probation as being less onerous than a term of imprisonment. While lifetime probation is unusual, it is not unusual in a constitutionally offensive manner. That is, it is unusual only because of the length of the probationary term and not because of the nature of the punishment.[6]

Affirmed.

F. X. O'BRIEN, J., concurs in the result only.

[5] We do not relish the thought that we or our colleagues may be asked to pass on the acceptability of revoking some probationer's freedom based upon some technical violation of the terms of his probation years after he was originally placed on lifetime probation.

[6] For a different analysis of this issue reaching the same result, see *People v Tanksley,* 103 Mich App 268; 303 NW2d 200 (1981).