PEOPLE v HAMP

Docket No. 96018. Submitted April 19, 1988, at Detroit. Decided July
    18, 1988. Leave to appeal applied for.

Joel P. Hamp was convicted of one count of possession of a
    mixture containing cocaine of 225 grams or more, but less than
    650 grams, with the intent to deliver and one count of conspir-
    acy to possess cocaine following a bench trial in Wayne Circuit
    Court, Paul S. Teranes, J. Defendant was sentenced to concur-
    rent terms of two to seven years imprisonment for the conspir-
    acy conviction and twenty to thirty years imprisonment for the
    possession with intent to deliver conviction. Defendant ap-
    pealed.

The Court of Appeals *held:*

1. The trial court did not err in denying defendant's motion
    to suppress evidence of the seizure of the package containing
    cocaine. The police officers involved had probable cause to
    suspect that defendant was committing a crime at the time the
    package containing cocaine was seized. The seizure was not
    improper and the evidence derived from the seizure need not be
    suppressed.

2. The package containing cocaine was properly opened with-
    out a search warrant. Defendant dropped the package as he ran
    from the police officers. Once the package was dropped, it was
    abandoned and defendant no longer had a reasonable expecta-
    tion of privacy in the package. The police did not need a search
    warrant to open the package and examine its contents.

3. Defendant's argument that, because no evidence was pre-
    sented showing that he was aware of the quantity of cocaine he

REFERENCES

Am Jur 2d, Appeal and Error § 798.
Am Jur 2d, Criminal Law §§ 525 *et seq.*, 625 *et seq.*
Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16 *et seq.*
Am Jur 2d, Searches and Seizures §§ 8 *et seq.*, 35 *et seq.*
Search and seizure: what constitutes abandonment of personal
    property within rule that search and seizure of abandoned prop-
    erty is not unreasonable—modern cases. 40 ALR4th 381.
Comment Note.—Length of sentence as violation of constitutional
    provisions prohibiting cruel and unusual punishment. 33 ALR3d
    335.

possessed, he should have been convicted of only possessing a minimal amount is rejected. Knowledge of the quantity of the controlled substance possessed is not an essential element of the offense. Furthermore, defendant testified that he believed the total weight of the box and the drugs it contained was two to three pounds. The trial court could and did properly infer that defendant was aware that the quantity of cocaine he possessed was at least 225 grams.

4. The inclusion of cocaine in the same classification scheme as heroin and other narcotics in the controlled substances provisions of the Public Health Code does not violate equal protection principles.

5. Defendant's argument that basing the grading of penalties upon the weight of the mixture rather than the weight of the cocaine in the mixture violates equal protection principles, even if found compelling, must be rejected because defendant does not have standing to make the challenge. The cocaine in the mixture defendant possessed would weigh at least 225 grams.

6. Similarly, defendant's argument that, since the mandatory minimum sentence for possession of 225 to 650 grams of cocaine is the same sentence as the maximum sentence for those who deliver smaller amounts, the sentencing scheme is disparate and irrational is rejected. Defendant has no standing to make this challenge.

7. Defendant's mandatory sentence of from twenty to thirty years does not constitute cruel and unusual punishment.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — APPEAL.

A trial court's decision on a motion to suppress evidence will be reversed only if the trial court abused its discretion or if its decision is clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

The Fourth Amendment prohibits all searches and seizures that are unreasonable and applies to all seizures of a person, including seizures that are brief and short of a traditional arrest (US Const, Am IV).

3. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — PROBABLE CAUSE.

Seizures generally are only reasonable for purposes of the Fourth Amendment if based upon probable cause (US Const, Am IV).

4. Searches and Seizures — Warrantless Searches — Probable Cause.

Probable cause has been defined as a state of mind which stems from some fact, circumstance, or information which would create an honest belief in the mind of a reasonably prudent person; probable cause to search exists where facts, circumstances, and information known to the police officers at the time of the search would warrant a person of reasonable prudence to believe that a crime has been or is being committed and that the evidence sought will be found in the stated place.

5. Searches and Seizures — Evidence — Abandonment.

A valid finding of abandonment of property by a defendant deprives the defendant of standing to assert a claim that the property abandoned was improperly seized by the police; abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent.

6. Criminal Law — Controlled Substances — Cocaine — Possession with Intent to Deliver

Four elements must be shown to support a finding that a defendant directly committed the crime of possession of cocaine with intent to deliver in any mixture of 225 grams or more, but less than 650 grams: (1) the substance involved must be shown to be cocaine; (2) it must be shown that the drug was in a mixture which weighed more than 225 grams but less than 650 grams; (3) the defendant must not be authorized by law to possess the substance; and (4) the defendant must have knowingly possessed the cocaine with the intent to deliver it; knowledge of the quantity of the controlled substance is not an essential element of the offense (MCL 333.7401[1] and [2][a][ii]; MSA 14.15[7401][1] and [2][a][ii]).

7. Controlled Substances — Public Health Code — Constitutional Law — Equal Protection.

The classification scheme contained in the controlled substances provisions of the Public Health Code whereby possession of cocaine is treated as severely as possession of heroin does not violate equal protection principles.

8. Controlled Substances — Public Health Code — Constitutional Law — Equal Protection.

The classification scheme contained in the controlled substances provisions of the Public Health Code whereby the severity of the crime is based upon the weight of a mixture containing a controlled substance rather than on the weight of the pure

substance contained in the mixture is related to the object of the legislation and is not violative of equal protection (MCL 333.7401; MSA 14.15[7401]).

9. CRIMINAL LAW — SENTENCING — CONTROLLED SUBSTANCES.

The mandatory sentence of from twenty to thirty years imprisonment for a conviction of possession of between 225 and 650 grams of cocaine with the intent to deliver it does not constitute cruel and unusual punishment (MCL 333.7401[2][a][ii]; MSA 14.15[7401][2][a][ii]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Brigid Vincent Marley,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Before: CYNAR, P.J., and GRIBBS and T. GILLESPIE,* JJ.

CYNAR, P.J. Following a bench trial in Wayne Circuit Court, defendant, Joel P. Hamp, was found guilty of one count of possession of a mixture containing cocaine of 225 grams or more, but less than 650 grams, with the intent to deliver, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii), and one count of conspiracy to possess cocaine, MCL 750.157a; MSA 28.354(1); MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). Defendant was sentenced to concurrent prison terms of from two to seven years on the conspiracy conviction and twenty to thirty years on the possession with intent to deliver conviction. He now appeals as of right from his convictions and sentences.

Defendant's convictions arose from an incident that took place at the home of Mark and Dorothy

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Konrad, located at 18973 Gillman in Livonia, Michigan. On August 30, 1984, at approximately 5:00 to 6:00 P.M., four plainclothes police officers of the Livonia Police Department were present at the Konrad home. Mr. Konrad had been arrested earlier that same day on another drug-related incident. The officers were at the Konrad residence awaiting the procurement of a search warrant for the Konrad home. Mrs. Dorothy Konrad was being held in the home while the officers waited for the search warrant.

Officers Peter Kunst and Gary Sitner testified that, while they were waiting for the warrant, several persons came to the Konrad residence. On at least twelve different occasions, Officer Sitner identified himself as a police officer and obtained the visitor's name before turning him or her away.

At approximately 6:30 P.M., defendant arrived at the Konrad home. He was described as carrying a Kodak slide carousel box. On top of this box was an egg-shaped package, completely taped in masking tape and hidden inside a pair of men's Khaki shorts. A baseball cap was resting on top of the shorts. Officer Kunst was standing outside the Konrad residence as the defendant came closer to the house.

Upon his arrival, defendant asked Officer Kunst if Mark Konrad was home. The officer replied that Mark was not home, but his wife was. The officer then asked defendant if he had something to drop off. Defendant answered yes. The officer told him Mrs. Konrad was at home and he could give it to her.

Defendant proceeded up the front porch, opened the front door, and stepped inside the house. As Officer Kunst was reaching for his badge wallet, defendant knocked the officer against the door and ran out the front door, dropping the package on

the front lawn. Defendant was apprehended approximately 2½ blocks away. He was returned to the Konrad residence. At the Konrad home, the package was opened and a white powdery substance was discovered. The powder field tested positive for cocaine.

Officer Sitner testified that defendant ran when Sitner announced that he was a police officer. Defendant denied that anyone identified himself as a police officer. Instead, defendant stated that he ran because he did not know what was happening when he entered the Konrad home since he saw Mrs. Konrad crying and Officer Kunst attempted to grab his arm.

David Burke, a state police chemist, testified that the package that was seized from defendant weighed 881.85 grams and was a seventy-five percent cocaine/twenty-five percent Mannitol mixture.

Defendant testified in his own behalf. He stated that, on August 26, 1984, he and his friend, Chris VanGison, traveled to Miami, Florida, in a rental car that was obtained by defendant with the use of his girlfriend's credit card. While in Miami, VanGison picked up a duffle bag from a bridal shop in downtown Miami. Thereafter, they drove back to Michigan, arriving on August 30, 1984. That same day, defendant was asked by VanGison to deliver a package to Mark Konrad. Defendant admitted that he knew that the package contained drugs, although he did not know the quantity. He was promised $500 for making the delivery.

On December 4, 1986, the trial court issued the verdict. The court found that defendant was aware that the trip to Florida was for the purpose of obtaining drugs. Because defendant was aware of the contents of the package, he was found guilty of conspiracy to possess cocaine with the intent to

deliver an amount of a mixture containing cocaine less than 650 grams but more than 225 grams. The court further found that knowledge of the weight of the drugs possessed with the intent to deliver was a necessary element of the crime. Therefore, because defendant did not know that the drugs that he was delivering weighed more than 650 grams, he could not be convicted of possession with intent to deliver an amount of 650 grams or more. However, the court concluded that it could be inferred that defendant knew the amount of drugs would be at least 225 grams but less than 650 grams. Therefore, defendant was found guilty of possession with intent to deliver an amount of cocaine of 225 grams or more but less than 650 grams. Following the imposition of his sentences, defendant filed the instant claim of appeal, raising four issues.

First, defendant alleges that the trial court clearly erred in denying his motion to suppress evidence of the seizure of the package containing cocaine. Defendant maintains that he was "seized" by the officers within the meaning of the United States Constitution the moment he entered the Konrad residence. The seizure was illegal, he argues, because the police had no particularized suspicion that defendant was engaged in criminal activity when he came to the Konrad home and there was no probable cause for his arrest. Therefore, defendant contends, any evidence derived from his illegal seizure should have been suppressed as "fruit of the poisonous tree."

An evidentiary hearing on defendant's motion to suppress the cocaine was held on July 7, 1986, before Judge Paul S. Teranes. Judge Teranes issued his written opinion on August 29, 1986, finding that the seizure of the cocaine was legal. Citing *People v Wright,* 151 Mich App 354; 390

NW2d 187 (1986), Judge Teranes concluded that defendant abandoned the package containing the cocaine as he ran out of the Konrad home, thereby eliminating the need for a search warrant to seize the package and then open it.

In addition, Judge Teranes concluded that there was probable cause to believe that defendant was carrying cocaine since Officer Kunst could see a portion of the egg-shaped object and it was reasonable for the officer to believe that defendant was carrying contraband since the police were at the home of Mark Konrad, who had completed a cocaine sale earlier that day. Finally, the court found that a warrant was unnecessary to detain defendant due to exigent circumstances.

A trial court's decision on a motion to suppress evidence will be reversed only if the trial court abused its discretion or if its decision is clearly erroneous. *People v Tanis,* 153 Mich App 806, 808; 396 NW2d 544 (1986), lv den 426 Mich 877 (1986). A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made. *People v Harris,* 164 Mich App 567, 571; 417 NW2d 502 (1987).

Defendant argues that the moment he entered the Konrad residence, with Officer Kunst behind him and Officer Sitner in front of him and reaching for their badges, he was "seized" within the meaning of the Fourth Amendment to the United States Constitution, thereby requiring the officers to have probable cause to believe that he was engaged in criminal activity. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unrea-

sonable searches and seizures, shall not be violated . . . . [US Const, Am IV.][1]

The Fourth Amendment prohibits all searches and seizures that are unreasonable. *United States v Sharpe,* 470 US 675; 105 S Ct 1568; 84 L Ed 2d 605 (1985). The Fourth Amendment applies to all seizures of a person, including seizures that are brief and short of a traditional arrest. *United States v Brignoni-Ponce,* 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975). Generally, seizures are only reasonable for purposes of the Fourth Amendment if based upon probable cause. *Dunaway v New York,* 442 US 200, 207-209; 99 S Ct 2248; 60 L Ed 2d 824 (1979).

Given the parties' agreement that the lawfulness of the seizure of the package containing cocaine is governed by a probable cause standard, we proceed to analyze the seizure as such. "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed [by the person to be arrested]." *Brinegar v United States,* 338 US 160, 175-176; 69 S Ct 1302; 93 L Ed 1879 (1949), quoting *Carroll v United States,* 267 US 132, 162; 45 S Ct 280; 69 L Ed 543; 39 ALR 790 (1925).

Our Court has defined probable cause as

a state of mind which stems from some fact,

---

[1] The analogous Michigan provision, Const 1963, art 1, § 11 states:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.

circumstance or information which would create an honest belief in the mind of a reasonably prudent person. More specifically, probable cause to *search* exists where facts and circumstances would warrant a person of reasonable prudence to believe that a crime has been or is being committed and that the evidence sought will be found in the stated place. In assessing whether probable cause exists, the facts, circumstances and information known to the officers at the time of the search must be examined. [Emphasis in original. Citations omitted. *People v Preston Williams,* 160 Mich App 656, 660; 408 NW2d 415 (1987).]

In this case, the trial court's decision that probable cause existed was not clearly erroneous or an abuse of discretion. The facts indicated that defendant came to the Konrad residence carrying the egg-shaped package. Earlier that day, Mark Konrad had been arrested for drug-related activities. The appearance of the package alerted Officer Kunst that it might contain narcotics because of his training with the Drug Enforcement Administration. Specifically, the size of the package and the manner in which it was taped with masking tape and then hidden inside the shorts led Officer Kunst to believe that the package contained narcotics. In addition, upon arriving at the Konrad residence, defendant told Officer Kunst that he had this package to deliver to Mark Konrad. Based on all these facts, a reasonably prudent person would believe that defendant was committing a crime.

The next issue that must be decided is whether the package was properly opened without a search warrant once defendant was placed under arrest. The law is clear that "a valid finding of abandonment deprives [defendant] of standing to assert a claim that the items of evidence in question were

improperly 'seized.'" *Parman v United States,* 130 US App DC 188, 194; 399 F2d 559, 565 (1968), quoted in *People v Kirchoff,* 74 Mich App 641, 645; 254 NW2d 793 (1977). "Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent." *Friedman v United States,* 347 F2d 697, 704 (CA 8, 1965); *People v Shabaz,* 424 Mich 42, 65-66; 378 NW2d 451 (1985). In our case, once defendant ran from the Konrad home and dropped the package, he abandoned it. Once this occurred, he no longer had a reasonable expectation of privacy in the package and the police were free to examine its contents. There was no need for a search warrant. See *Kirchoff, supra.*

Next, defendant alleges that, since no evidence was presented showing that defendant was aware of the quantity of cocaine he possessed, he should have been convicted of only possessing a minimal amount. Defendant was charged with possession with intent to deliver cocaine in an amount greater than 650 grams. Defense counsel argued that *knowledge* of the *quantity* that defendant possessed was an essential element of the crime. Since the prosecutor had not proven that defendant knew the quantity that he possessed, defendant argues that he should have been convicted of possessing only a minimal amount of cocaine. Defendant urges this Court to find that knowledge of the quantity of the controlled substance possessed is an element of this crime.

Defendant was convicted of possession of cocaine with intent to deliver 225 grams or more but less than 650 grams. The crime of possession of cocaine with intent to deliver in any mixture of 225 grams or more but less than 650 grams requires the showing of four elements: (1) the substance was cocaine; (2) the drug was in a mixture which

weighed more than 225 grams but less than 650 grams; (3) defendant was not authorized by law to possess the substance; and (4) defendant knowingly possessed the cocaine with the intent to deliver. *People v Acosta,* 153 Mich App 504, 511-512; 396 NW2d 463 (1986), lv den 428 Mich 865 (1987); CJI 12:2:00. Contrary to defendant's assertion, knowledge of the quantity of the controlled substance is not an essential element of this offense. At this time, this Court refuses to require that that element be shown. Further, assuming arguendo that knowledge was an essential element, it could be inferred that defendant was aware that the quantity he possessed was at least 225 grams but less than 650 grams. Defendant testified that he was aware that the package contained drugs and that he believed the total weight of the box and drugs was two to three pounds. Therefore, the trial court properly inferred that defendant knew he was in possession of 225 grams or more of cocaine.

Defendant also alleges that the mandatory sentencing scheme denied him equal protection of the laws for three reasons: (1) placement of cocaine in the same category as a narcotic drug rather than the pharmacologically similar barbiturates; (2) basing the grading of penalties upon the weight of the mixture rather than the weight of the cocaine itself; and (3) the statutory minimum/maximum sentencing scheme is inflexible and irrational and creates widely disparate sentences. We will address each claim separately.

*Classification of cocaine along with other narcotics.*

Defendant alleges that inclusion of cocaine in the same classification scheme as heroin and other

narcotics violates equal protection principles because there is a debatable medical issue regarding the relative danger of cocaine. Defendant admits that this Court upheld the constitutionality of the statute from the same attack in *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982). However, defendant asks the Court at this time for a reconsideration on the constitutionality of the statute.

We find no constitutional violation in the classification scheme. We agree with *People v Acosta, supra,* pp 513-514, where this Court rejected a similar attack and upheld the *Campbell* Court's conclusion:

> Briefly considering defendant's more specific argument, that possession of pharmacologically similar substances should be punished similarly, we must reject that argument. In establishing controlled substance laws, the Legislature is not constrained to consider only the pharmacological effect of a drug. Rather, the Legislature may also consider additional social problems posed by a particular substance. For example, the Legislature might conclude that a particular substance is abused to a much greater extent than a similar drug. This greater abuse may warrant the Legislature's imposition of a harsher punishment for possession of the substance. Similarly, a particular drug may be produced or imported more easily and cheaply than another, thus requiring a greater deterrence under the penal code. On the record and arguments before us, we cannot conclude, as a matter of constitutional law, that the Legislature cannot classify cocaine with heroin under the statute. We must continue to adhere to the decision in *Campbell.*

*Basing the grading of penalties upon the weight of the mixture rather than the weight of the cocaine.*

This claim, while found compelling, was similarly rejected in *People v Acosta, supra,* p 514. In addition, in *Acosta,* this Court found that the defendant was without standing to make this challenge since the defendant possessed at least 230 grams of cocaine in the mixture. Acosta's conviction for possession of more than 225 grams was therefore upheld.

In our case, defendant was in possession of 881.85 grams, seventy-five percent of which was pure cocaine. Thus, even if we accept defendant's argument and consider solely the weight of the cocaine, his conviction was appropriate since the cocaine itself would weigh at least 225 grams but less than 650 grams. Thus, as in *Acosta, supra,* we believe that defendant is not the proper individual to advance this claim.

*Sentencing scheme is irrational.*

Defendant alleges that, since the mandatory minimum sentence for possessing 225 to 650 grams is the same sentence as the maximum sentence for those who deliver smaller amounts, it is disparate and irrational. However, while this argument may have some merit, defendant is not the appropriate person to advance it. See *Acosta, supra,* p 515.

Finally, defendant's mandatory sentence of from twenty to thirty years does not constitute cruel and unusual punishment. See *People v Leighty,* 161 Mich App 565; 411 NW2d 778 (1987); *Acosta, supra; Campbell, supra.*

Affirmed.