PEOPLE v ANAT ROMANO

PEOPLE v ZORY ROMANO

Docket Nos. 103036, 103685, 103686. Submitted July 26, 1989, at Detroit. Decided November 20, 1989.

Zory Sadi Romano was convicted by a Wayne Circuit Court jury of possession of over 650 grams of heroin. The trial court, Joseph A. Gillis, J., imposed a sentence of life imprisonment as mandated by the controlled substances provisions of the Public Health Code. In a separate jury trial before the same judge, the jury convicted Zory Sadi Romano and his sister, Anat Romano, of possession of less than fifty grams of cocaine. Shortly before their arrest, the Romanos had concluded a stay at the Quality Inn in Romulus, Michigan, but left a briefcase in the room they had occupied. Anat Romano returned to the Quality Inn and engaged the aid of a security guard in attempting to retrieve the briefcase. However, a dead bolt lock, to which only the inn's maids had a key, prevented their entry to the room. The guard asked that Romano leave her name and an address to which the briefcase could be sent. She refused and, instead, had the guard speak by telephone to Zory Romano, who eventually informed the guard to "forget about the briefcase." The guard subsequently gained access to the room and found a briefcase hidden underneath a bed. The guard called the Romulus Police Department. An officer picked up the briefcase, took it back to police headquarters, opened it, and discovered $10,000, about five grams of cocaine and Zory Romano's passport. The security guard subsequently saw Zory Romano at the Quality Inn and the guard summoned the police, who then arrested Romano after he produced a driver's license with information matching the passport found in the briefcase. A custodial search of

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons § 48; Evidence §§ 321-326; Searches and Seizures §§ 9, 16, 37.

Search and seizure: what constitutes abandonment of personal property within rule that search and seizure of abandoned property is not unreasonable—modern cases. 40 ALR4th 381.

Validity of state statute imposing mandatory or prohibiting granting of probation or suspension of sentence for narcotics offenses. 81 ALR3d 1192.

Romano's person yielded $31,027 and several items, including keys to a rental car. Romano indicated that he was then staying at the Knights Inn. The police obtained a warrant for a search of the room at the Knights Inn registered in Anat Romano's name. There, the police discovered 254.4 grams of cocaine, a .38 caliber revolver and bullets for a .357 magnum. A subsequent search of the rental car, conducted without a warrant, yielded 879.7 grams of heroin. Defendants appealed, raising several claims.

The Court of Appeals consolidated the appeals and *held:*

1. The search of the briefcase was not unlawful since defendants had abandoned the briefcase.

2. Probable cause for Zory Romano's arrest without a warrant for possession of a controlled substance existed with the discovery of cocaine and his passport in the briefcase. Proof of close proximity between a controlled substance and a defendant's important papers establishes a prima facie case of possession.

3. Evidence seized in the search of the Knights Inn room was made pursuant to a valid warrant supported by sufficient probable cause.

4. The search of the rental car was not illegal. Where the police have probable cause to believe there is contraband inside an automobile, the police may search the automobile without a warrant, even after the automobile has been impounded and is in police custody. Here, the police, after having discovered controlled substances, large sums of money, a pistol, and bullets for another pistol, had probable cause to believe that the rental car contained additional contraband.

5. The trial judge did not abuse his discretion in allowing the prosecution at Zory Romano's trial for heroin possession to introduce evidence of the discovery of cocaine in Zory Romano's briefcase and room at the Knights Inn. Such evidence was admissible as evidence of a similar bad act under MRE 404(b).

6. The mandatory life imprisonment penalty provided by the controlled substances portion of the Public Health Code for possession of 650 or more grams of a controlled substance does not violate the constitutional guarantees of equal protection and separation of powers nor does it constitute cruel and unusual punishment.

7. The conduct and comments of the trial judge at defendants' trial for possession of cocaine were not of such a nature as to unduly influence the jury and deprive Anat Romano of a fair and impartial trial.

8. A remand is necessary for a resentencing of Anat Romano

since it does not appear that the trial court completed the calculations mandated under the sentencing guidelines or that the trial court considered the suggested minimum sentence. The trial court is reminded that Anat Romano is to be sentenced pursuant to the statutory provisions in effect at the time she committed her offense, and not pursuant to the amended provisions now in effect.

Affirmed but remanded for a resentencing of Anat Romano.

1. CRIMINAL LAW — EVIDENCE — APPEAL.

A trial court's decision on a motion to suppress evidence will be reversed only if the trial court abused its discretion or if its decision is clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

Fourth Amendment rights are personal rights and may not be vicariously asserted; a defendant who was not present at the time of a search and who does not assert a possessory or proprietary interest in the evidence seized does not have standing to challenge the search and seizure or seek suppression of the evidence seized.

3. SEARCHES AND SEIZURES — REASONABLENESS — ABANDONMENT.

The lawfulness of a search or seizure depends upon its reasonableness; the seizure of abandoned property is presumptively reasonable since the owner no longer has an expectation of privacy in the property that he has abandoned.

4. SEARCHES AND SEIZURES — EVIDENCE — ABANDONMENT.

A valid finding of abandonment of property by a defendant deprives the defendant of standing to assert a claim that the property abandoned was improperly seized by the police; abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent.

5. ARREST — WARRANTLESS ARREST — PROBABLE CAUSE.

An arrest without a warrant is legal only if the police have probable cause to arrest.

6. CONTROLLED SUBSTANCES — POSSESSION — PROXIMITY TO IMPORTANT PAPERS.

Proof of close proximity between a controlled substance and a defendant's important papers establishes a prima facie case of possession of the controlled substance.

7. SEARCHES AND SEIZURES — AUTOMOBILES — WARRANTLESS SEARCH
— PROBABLE CAUSE.

Police officers, when they have probable cause to believe that
contraband is inside an automobile, may conduct a search of
the automobile without a warrant even after the automobile
has been impounded and is in police custody.

8. EVIDENCE — APPEAL.

A trial court's decision to admit or exclude evidence is a matter
for the sound discretion of the trial judge and will not be
disturbed on appeal absent an abuse of discretion; an abuse of
discretion is found only if an unprejudiced person, considering
the facts on which the trial court acted, would say that there
was no justification or excuse for the ruling made.

9. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a defendant's similar criminal act may be admitted
where (1) there is substantial evidence that the defendant
actually perpetrated the similar act sought to be introduced; (2)
some special quality or circumstance of the act tends to prove
the defendant's identity, or the motive, intent, absence of
mistake or accident, scheme, plan, or system in doing the act,
or opportunity, preparation, or knowledge; (3) one or more of
those factors is material to the determination of the defen-
dant's guilt of the charged offense; and (4) the probative value
of the evidence substantially outweighs the danger of unfair
prejudice (MRE 404[b]).

10. CONTROLLED SUBSTANCES — MANDATORY LIFE SENTENCES — CON-
STITUTIONAL LAW.

The provision in the controlled substances portion of the Public
Health Code providing for a mandatory life sentence for posses-
sion of 650 or more grams of a controlled substance does not
violate the constitutional guarantees of equal protection and
separation of powers nor does it constitute cruel and unusual
punishment (MCL 333.7403[2][a][i]; MSA 14.15[7403][2][a][i]).

11. JUDGES — IMPARTIALITY — APPEAL.

A judge, in conducting a trial, has great power and wide discre-
tion but his power is not unlimited, and if an examination of
the record reveals that a trial judge has pierced the veil of
judicial impartiality, a case must be reversed.

12. JUDGES — IMPARTIALITY — FAIR TRIAL — APPEAL.

The test to be applied to determine whether a trial judge has
pierced the veil of judicial impartiality requiring reversal is
whether his comments were of such a nature as to unduly

influence the jury and thereby deprive a party of his right to a fair and impartial trial.

13. CRIMINAL LAW — SENTENCING.

The use of the sentencing guidelines when imposing a sentence for an offense included in the guidelines is mandatory, but imposing a sentence based on the guidelines' recommendations is not.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Sean M. Taylor,* for Anat Romano.

*Fried, Saperstein, De Vine & Kohn, P.C.* (by *Steven R. Sonenberg*), for Zory Sadi Romano.

Before: SAWYER, P.J., and DOCTOROFF and R. B. BURNS,* JJ.

R. B. BURNS, J. Zory Romano was convicted by a jury of illegal possession of over 650 grams of heroin. MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i). In a separate trial the jury convicted Zory Romano and his sister, Anat Romano, on one count each of illegal possession of less than fifty grams of cocaine. MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv). We affirm, but remand for resentencing of Anat Romano.

In Docket No. 103036, Anat Romano appeals her conviction and sentence, arguing that evidence used against her should have been suppressed since it was the result of an illegal search, that

_____

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

actions by the presiding judge at trial prejudiced the jury and deprived her of a fair trial, and that she should be resentenced because the trial judge failed to follow the sentencing guidelines and because her sentence shocks the judicial conscience. In Docket Nos. 103685 and 103686, Zory Romano appeals his heroin and cocaine convictions, respectively. He argues that evidence obtained from an illegal search was improperly used against him, that evidence of his possession of cocaine was improperly admitted during his trial for heroin possession and that the statute making possession of a controlled substance illegal violates the constitutional mandates of equal protection and the separation of powers, and the constitutional prohibitions against cruel and unusual punishment. The three appeals have been consolidated by this Court.

On February 23, 1987, defendants, who are Israeli citizens, checked in at the Quality Inn in Romulus, Michigan. The next day they made arrangements to stay in the hotel for another night. On February 25, 1987, defendants requested to remain in the hotel for another night but were told that that would not be possible because the hotel was fully booked for that night. Checkout time was 12:00 noon. When defendants had not vacated by 2:00 or 3:00 in the afternoon, the hotel manager, Robert Davies, went to their room to request that they leave. Zory Romano was out, so Mr. Davies explained to Anat Romano that they had to leave. She explained that her brother would return in an hour and that they would leave. When they had not left by 5:00 P.M., Mr. Davies returned to their room, waited while Anat Romano packed her and her brother's belongings, and escorted the woman to the lobby. Anat Romano eventually left the premises by taxicab. A

security guard overheard Anat Romano request that the cab driver take her to the Knights Inn. About a half hour later, Anat Romano returned to the Quality Inn and explained to the security guard that she had inadvertently left a briefcase in the room she had occupied. The guard's attempt to enter the room to retrieve the briefcase was unsuccessful, apparently because the dead bolt, to which allegedly only the maids had a key, was engaged. The guard believed that all maids had left the hotel for the day. After it appeared that he would be unable to gain access to defendants' former room, the security guard suggested that Anat Romano leave her name and address so that the hotel could send the briefcase to her. She refused, protesting that she was leaving on a flight that night, and insisted on calling her brother. The security guard spoke to Zory Romano over the phone. At first Zory Romano was upset and threatened to call the police. When the guard concurred in the suggestion, however, Zory Romano became apologetic and allegedly told the guard, "[F]orget about the briefcase . . . I know where the briefcase is . . . I got it at one of my friend's house." Anat Romano then left the Quality Inn.

About fifteen minutes later, the guard discovered that some of the maids were still in the hotel and had them let him into the room where defendants had stayed. They searched the room and finally found a briefcase under the bed. The support for the bed is apparently solid wood and attached to the floor. The mattress and box springs rest upon the support so that it is impossible to gain access to the area underneath the bed without completely lifting both the springs and the mattress. The security guard put the briefcase back where he had found it and called the Romulus Police Department. Officer Dwayne Smith ar-

rived and picked up the briefcase. The case had no identifying marks on it; however, Officer Smith was told by the guard that it belonged to the people who had just rented the room. He was informed that defendants had called and inquired about the case and that Anat Romano had returned to the Quality Inn in an attempt to get the case. The officer was provided with a piece of paper with Zory Romano's name on it. The security guard also apparently told Officer Smith that defendants had obtained lodging at the Knights Inn, a fact which the guard had confirmed with that hotel by phone. Testimony was given at the preliminary examination that Zory Romano's alleged assertion that the briefcase had been discovered elsewhere was told to the officer. Testimony elicited at the subsequent trial substantiated this same fact. Fifteen minutes after Officer Smith took the briefcase to the police station, he forced open its lock. He discovered $10,000, a small quantity (about 5.382 grams) of cocaine in the fingers of a glove, and Zory Romano's passport.

About fifteen minutes after the police left with the briefcase, the security guard at the Quality Inn observed an individual whom he believed to be Zory Romano enter the hotel and proceed to the second floor. The guard called the police. After the police arrived, Zory Romano was confronted and asked for identification. When the name on his California driver's license matched the one on the passport in the briefcase, he was arrested. The police then conducted a custodial search of Zory Romano and confiscated $31,027, jewelry, a watch, a wallet, and car keys attached to a tag identifying his rented vehicle by make and license number. Zory Romano admitted to owning the briefcase and said that he was then staying at the Knights Inn.

The police arrived at the Knights Inn at about 12:30 A.M. with a warrant to search the room registered in Anat Romano's name. In searching the room, police discovered 254.4 grams of cocaine, a .38 caliber revolver and bullets for a .357 magnum. Officer Ondejko returned to the Quality Inn to search for the .357 magnum and sent Officer St. Andre to search Zory Romano's rental car for the apparently missing gun. The police had no warrant to search the vehicle. Upon finding the rental car, Officer St. Andre searched it for the .357 magnum. He discovered nothing in the passenger's compartment; however, in the trunk of the vehicle, Officer St. Andre discovered a paper bag containing drug paraphernalia, and 879.7 grams of heroin.

At the preliminary examination, the district judge rejected defense counsel's argument that the search of the briefcase, conducted without a warrant, was illegal. The judge ruled that

[the security guard] was told by some foreign male, forget about the suitcase. It's at a friend's house. Therefore, he had every reason to believe that the suitcase, if there was a suitcase there, did not belong to whoever was calling, or it was abandoned. He testified that he told either Officer Smith or the dispatcher that same thing.

He later reiterated:

I have held that after the guard, security guard had the discussion with the people who were involved at least over the telephone, there was a foreign male who called him once. Told him he wanted to get the bag and called back and said forget it. The bag is at a friend's house. Don't look for it anymore. That he had every reason to believe that the bag was abandoned. And when he search [sic] the room with the help of maids, and

> found a bag. He contacted the Police Department, conveyed to them the information they had.
>
> Officer Smith arrived, took the bag to the police station. Opened it for the purpose of attempting to locate some identification in it . . . .
>
> I'm satisfied that the police officer, Officer Smith, had a right to open that thing . . . .

The trial court also overruled defense counsel's objection to the search of Zory Romano's car. The court did not specify the grounds for its ruling, but it ruled, following the prosecution's assertion, that the search without a warrant was legal because public safety was a concern since a possible second gun was missing.

At Zory Romano's heroin possession trial, Zory Romano denied knowledge of the heroin discovered in the trunk of his rental car. The prosecution indicated that it intended to introduce evidence of Zory Romano's cocaine possession, for which he had been charged but not yet convicted. Judge Gillis overruled the defense objection to the admissibility of this evidence:

> [T]his is all part of the same transaction. And due to the nature of the defense, I think it is admissible. It's got a certain probative value, as to whether he was connected, in any way, with the drugs in the trunk of the car. I'll overrule the objection.

Evidence of the discovery of a small amount of cocaine in Zory Romano's briefcase and the larger quantity in the room at the Knights Inn was then admitted during the heroin trial.

On appeal, defendants claim that certain evidence admitted against them at trial was the fruit of an illegal search and seizure. A trial court's decision on the legality of a search or seizure will

be reversed only if the trial court abused its discretion or if its decision is clearly erroneous. *People v Hamp,* 170 Mich App 24, 31; 428 NW2d 16 (1988); *People v Tanis,* 153 Mich App 806, 808; 396 NW2d 544 (1986), lv den 426 Mich 877 (1986). A finding is clearly erroneous where, although there is evidence to support it, a reviewing court is firmly convinced that a mistake has been made. *People v Harris,* 164 Mich App 567, 571; 417 NW2d 502 (1987); *Hamp, supra.*

Fourth Amendment rights are personal so that an individual does not have standing to challenge a search and seizure unless that person was present at the time of the search or asserts a possessory or proprietary interest in the thing searched or seized. *People v Sellars,* 153 Mich App 22, 26; 394 NW2d 133 (1986), lv den 426 Mich 879 (1986). Further, lawfulness of a search or seizure depends upon its reasonableness. *People v Orlando,* 305 Mich 686, 690; 9 NW2d 893 (1943).

Defendants argue that the trial court's ruling that the briefcase was abandoned was error and evidence obtained from the illegal search of it was improperly admitted at trial. The seizure of abandoned property is presumptively reasonable since the owner no longer has an expectation of privacy in the property that he has abandoned. *Abel v United States,* 362 US 217; 80 S Ct 683; 4 L Ed 2d 668 (1960).

> "Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent." *Freidman v United States,* 347 F2d 697, 704 (CA 8, 1965). "The proof supporting abandonment should 'reasonably beget the exclusive inference of throwing away . . . .' " *People v Howard,* 50 NY2d 583, 593; 408 NE2d 908; 430 NYS2d 578 (1980). [*People v Shabaz,* 424 Mich 42, 65-66; 378 NW2d 451 (1985).]

One seeking the benefit of the Fourth Amendment must first carry the burden of showing that the Fourth Amendment is applicable. *People v Nash,* 418 Mich 196, 204; 341 NW2d 439 (1983), citing *Rawlings v Kentucky,* 448 US 98; 100 S Ct 2556; 65 L Ed 2d 633 (1980). Since there is no expectation of privacy in abandoned property and since the Fourth Amendment applies only when there is such an expectation of privacy, the defendant carries the burden of showing that the item searched was not abandoned. Upon such a showing, a search and seizure are reasonable for purposes of the Fourth Amendment only if they are based upon probable cause. See *Dunaway v New York,* 442 US 200, 207-209; 99 S Ct 2248; 60 L Ed 2d 824 (1979); *Hamp, supra,* pp 32-34. The inquiry, then, is twofold: (1) Did defendants abandon the briefcase so that the police search and seizure were presumptively reasonable? or (2) Did the police have probable cause to search for and seize the briefcase?

The trial court concluded that Anat and Zory had abandoned the briefcase. We concur. Anat and Zory Romano had paid their bill and vacated the room. Anat Romano declined to give a forwarding address where the briefcase, if found, could be sent. When defendant told the security guard to forget the briefcase, stating that he knew it was at a friend's house, the briefcase was abandoned. Once this occurred, defendants no longer had a reasonable expectation of privacy in the briefcase, and the police, having been told of the intent to abandon, were free to examine its contents. See *People v Kirchoff,* 74 Mich App 641, 646-647; 254 NW2d 793 (1977). There is nothing unlawful in the government's appropriation of abandoned property. See *Abel, supra.* Therefore, the search of the briefcase was legal.

Defendant Zory Romano next argues that his arrest was unlawful because it was based on evidence unlawfully seized from the briefcase. An arrest without a warrant is legal only if the police have probable cause to arrest. See *Dunaway, supra; People v Hamoud,* 112 Mich App 348, 351; 315 NW2d 866 (1981), lv den 414 Mich 959 (1982). Illegally obtained evidence may not be used to establish probable cause to arrest. See *Johnson v United States,* 333 US 10; 68 S Ct 367; 92 L Ed 436 (1948). Further, evidence obtained pursuant to an unlawful arrest is fruit of the prior illegality and therefore inadmissible. *People v Mersino,* 419 Mich 899, 900; 352 NW2d 272 (1984).

We have determined that the search of the briefcase was legal. The discovery of an illegal substance in the briefcase containing Zory Romano's passport creates probable cause for Zory Romano's arrest for the possession of that illegal substance. Proof of close proximity between a controlled substance and a defendant's important papers establishes a prima facie case of possession. See *People v Peterson,* 63 Mich App 538, 546-547; 234 NW2d 692 (1975), where this Court ruled that there was sufficient evidence of possession where the prosecution established that the title to defendant's motorcycle was in a shoe box with marijuana in the common area of his apartment building. Given the conclusion that the briefcase search was legal, lawfully obtained evidence was used to justify Zory Romano's arrest, and therefore his arrest and the seizure of further evidence from his person were lawful.

Similarly, we conclude that the evidence seized from the Knights Inn room, pursuant to a valid search warrant, was legally seized. Probable cause to search the Knights Inn room registered to Anat Romano existed because of her close connection to

the briefcase, having asserted an ownership interest in it when she returned to the hotel to retrieve it, and because of the fact that she and Zory Romano were traveling together. Additionally, Zory Romano told the police he was staying at the Knights Inn in the same room as Anat Romano.

Defendant Zory Romano next claims that the search of his rented vehicle was illegal because the police had neither probable cause and an exigent circumstance nor a warrant to search the trunk of the car. An unbroken line of United States Supreme Court cases beginning with *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), and including the more recent decisions of *Michigan v Thomas,* 458 US 259; 102 S Ct 3079; 73 L Ed 2d 750 (1982), and *Florida v Meyers,* 466 US 380; 104 S Ct 1852; 80 L Ed 2d 381 (1984), have held that, when officers have probable cause to believe there is contraband inside an automobile, the officers may conduct a search of the vehicle without a warrant, even after it has been impounded and is in police custody. *People v Wade,* 157 Mich App 481, 486; 403 NW2d 578 (1987).

In this case, the police had probable cause to search the vehicle in question for the .357 magnum. The police had found controlled substances in Zory Romano's briefcase and in the hotel room registered under his sister's name, with whom he had been traveling. A large sum of money was found on his person. The facts and circumstances within the police officer's knowledge would warrant a person of reasonable caution to believe that the missing gun or possibly other contraband would also be found in defendant's vehicle. See *Shabaz, supra,* p 58.

We conclude that the district court's decision on the defendant's motion to suppress was not an abuse of discretion or clearly erroneous. The cir-

cuit court's decision to uphold the district court was correct. All of the searches and seizures were legal.

Zory Romano also claims that it was an abuse of discretion for the trial court to admit evidence of his possession of cocaine in his heroin trial. The decision of whether to admit evidence is within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *People v Siler,* 171 Mich App 246, 252; 429 NW2d 865 (1988); *People v Harden,* 166 Mich App 106, 111; 420 NW2d 136 (1988). An abuse of discretion is found only if an unprejudiced person, considering the facts on which a trial court acted, would say that there was no justification or excuse for the ruling made. *People v Hamm,* 100 Mich App 429, 438; 298 NW2d 896 (1980), lv den 411 Mich 888 (1981). Since Zory Romano's heroin trial took place prior to his trial for possession of cocaine, the admissibility of evidence of possession of this latter substance would be controlled by the rules pertaining to prior bad acts. MRE 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

In order to admit evidence under MRE 404(b), the following four requirements must be met: (1) there must be substantial evidence that the defendant actually perpetrated the bad acts sought to

be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act, or opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982).

In this case, the prosecutor was allowed to introduce evidence that cocaine was discovered both in Zory Romano's briefcase and in the hotel room at the Knights Inn. Zory Romano argues that there was no substantial evidence that he ever possessed the cocaine discovered at the Knights Inn. However, the defendants were traveling together. They had shared the same room in the Quality Inn. Zory had told people he was staying at the Knights Inn with his sister. In addition, a suitcase with men's clothing was found at the Knights Inn. There were sufficient facts to invoke MRE 404(b) and it was not an abuse of the trial judge's discretion to allow such evidence.

Finally, Zory Romano argues that the provision in the controlled substances act providing for a mandatory life sentence violates the constitutional guarantees of equal protection and separation of powers and the prohibition against cruel and unusual punishment. This Court has upheld the constitutionality of MCL 333.7403; MSA 14.15(7403), as well as the similar statute MCL 333.7401; MSA 14.15(7401), and repeatedly found that they did not constitute cruel and unusual punishment. See, e.g., *Hamp, supra,* p 37; *People v Leighty,* 161 Mich App 565, 583; 411 NW2d 778 (1987), lv den 430

Mich 895 (1988); *People v Acosta,* 153 Mich App 504, 515; 396 NW2d 463 (1986), lv den 428 Mich 865 (1987); *People v Matthews,* 143 Mich App 45, 64; 371 NW2d 887 (1985); *People v Campbell,* 115 Mich App 369, 376-381; 320 NW2d 381 (1982), lv den 417 Mich 879 (1983). This Court has specifically considered and rejected the argument that life imprisonment for a conviction under MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i) constitutes cruel and unusual punishment. *People v McCarty,* 113 Mich App 464; 317 NW2d 659 (1982), lv den 414 Mich 958 (1982).

Anat Romano claims she was denied a fair trial due to the extensive prejudicial interference and adverse decisions by the trial judge.

In *People. v Collier,* 168 Mich App 687, 698; 425 NW2d 118 (1988), lv den 431 Mich 859 (1988), this Court set forth the standard of review for the conduct of a trial judge:

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. . . . This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. . . . The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." [Citations omitted.]

We have considered each of Anat Romano's contentions and conclude that the trial court's conduct and comments were not of such a nature as to unduly influence the jury and deprive her of a fair and impartial trial. The first, third, and fourth alleged instances of misconduct were pre-

cipitated by defense counsel himself when he repeatedly interrupted a witness, when he was late to court, and when he started making factual statements to the jury without letting it know that these were facts he thought he would be able to prove. The second instance involved counsel for Zory Romano and could not have reflected badly upon her. The fifth instance was merely an indication by the court as to which defense would be presented first, and the final instance, the reference to Anat Romano's Jewish faith, was harmless. By this point in the proceedings, the jury was well aware that defendants were Israeli citizens, and the court's comment came across as an explanation, not as an accusation. The court's conduct and comments did not unduly influence the jury to the extent that it deprived Anat Romano of a fair and impartial trial.

Defendant Anat Romano claims that her sentence was improper because the trial court failed to use the guidelines and because her sentence shocks the judicial conscience. Our Supreme Court has made the use of the sentencing guidelines mandatory for sentences imposed on or after March 1, 1984. *People v Humphrey,* 144 Mich App 784, 785-786; 376 NW2d 191 (1985). Although adherence to the minimum sentences suggested by the guidelines is not mandatory, sentencing courts must complete the guideline calculations and consider the resultant suggested minimum sentence. *People v Ridley,* 142 Mich App 129, 133-134; 369 NW2d 274 (1985).

It does not appear that the trial court completed the guideline calculations or considered the suggested minimum sentence in this case. The case file contains no copy of the Sentence Information Report that should have been completed. In addition, the transcript of Anat Romano's sentencing

contains no reference to an SIR or to any suggested minimum sentence. Therefore we remand Docket No. 103036 to the trial court for a resentencing of Anat Romano comporting with the sentencing guidelines. We note that the statute under which she was convicted has been amended since she was sentenced to institute a mandatory minimum sentence, and the sentencing guidelines have been modified accordingly. However, she should be sentenced under the statute in force at the time of the commission of the crime. See *People v Jackson,* 179 Mich App 344; 445 NW2d 513 (1989); *People v Osteen,* 46 Mich App 409, 413; 208 NW2d 198 (1973), lv den 390 Mich 760 (1973).

The convictions of both defendants are affirmed. Docket No. 103036 is remanded for a resentencing of Anat Romano.