*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

CHARLES MATTHEW STALLMAN,

Defendant-Appellee.

UNPUBLISHED
March 24, 2022

No. 355965
Leelanau Circuit Court
LC No. 15-001887-FH

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In this prosecutor's appeal, plaintiff appeals by right the trial court's order reducing defendant's restitution obligation from $413,000 to $196,415, while increasing his monthly payments from $50 to $150. We affirm.

## I. BACKGROUND

In 2015, defendant pleaded guilty to a violation of the Construction Lien Act,[1] see MCL 570.1110(11)(c)(*i*), because he, a builder, falsified certain documents involving the payment of subcontractors. At issue were construction projects undertaken for Jeffrey Dietel and Rosemary McNally (Dietel/McNally), and for Benjamin Amber (Amber). Dietel/McNally and Amber paid defendant $484,615 for work done on their projects by subcontractors, but defendant misappropriated $366,703 of the money rather than pay the subcontractors. Defendant's ex-wife, Elizabeth Stallman, was involved in the building company as a bookkeeper, but was not charged in the matter. Dietel/McNally and Amber encountered problems when the subcontractors sought payment from them, including by the placement of liens on their properties.

Defendant's sentence originally included an obligation to pay $413,000 in restitution, but defendant later moved for a hearing to redetermine the amount on the grounds that the trial court had not particularized how it arrived at its original calculation, and that Elizabeth Stallman had

---

[1] MCL 570.1101 *et seq.*

-1-

made payments to Dietel/McNally and Amber in civil proceedings that should count against the continuing restitution obligation. The trial court determined that defendant's restitution should be decreased by the amount that Elizabeth Stallman had reimbursed the subcontractors, Dietel/McNally, and Amber, but that defendant's monthly obligation to Dietel/McNally and Amber should be increased. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's restitution order for an abuse of discretion. *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). Likewise, the court's decision whether to hold an evidentiary hearing, *People v Danto*, 294 Mich App 596, 613; 822 NW2d 600 (2011), along with other aspects of the court's general conduct of proceedings, see *People v Ramano*, 181 Mich App 204, 220; 448 NW2d 795 (1989). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This Court reviews a trial court's factual findings for clear error. *Gubachy*, 272 Mich App at 708. However, unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under this standard, reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings" independent of the defendant's innocence. *Id.*

## III. RESTITUTION HEARING

Plaintiff first argues that the trial court abused its discretion by holding a restitution hearing because defendant did not timely object at sentencing to the restitution award. The trial court specifically considered plaintiff's argument against holding a restitution hearing at a July 2020 motion hearing, and concluded that the amount of restitution required further investigation because "there was no full recitation of the restitution amounts, nor was there a stipulation placed on the record as to the restitution amounts." The court further held that new information before it—"the resolution in the bankruptcy court with one of the claimants, Old Mission Windows, . . . that the defendant has had a bankruptcy discharge as to remaining assets, and . . . that his ex-wife may have also paid on some of these amounts"—allowed it to hold a hearing to amend the restitution order. We agree.

We recognize that in *People v Grant*, 455 Mich 221, 243; 565 NW2d 389 (1997), our Supreme Court stated that "[o]nly an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence." In this case, defendant did not dispute the restitution order at his October 2015 sentencing, his June 2016 motion for resentencing, or at any time before his November 2016 application for leave to appeal to this Court. Defendant first moved for a restitution hearing in January 2019, withdrew the motion, then moved again for such a hearing in April 2020. Notably, however, defendant was not belatedly raising a challenge that should have been resolved at sentencing, but rather was seeking further proceedings in response to new information.

MCL 780.766(22) provides, "The court may amend an order of restitution entered under this section on a motion by the prosecuting attorney, the victim, or the defendant based upon new

information related to the injury, damages, or loss for which the restitution was ordered." Plaintiff asserts that defendant's ex-wife's payments to defendant's victims were known at the time of his sentencing, and that there was otherwise no new information for the trial court to consider. However, plaintiff itself moved for a modification of the monthly restitution payments on the basis of new information about defendant's finances from his bankruptcy hearing, thereby implicitly acknowledging the trial court's discretion to modify the restitution order. Moreover, plaintiff conceded the existence of new information relating to defendant's finances by relying on such information as the basis for plaintiff's request that defendant be ordered to pay larger amounts of monthly restitution. Also, at sentencing plaintiff acknowledged a lack of information for determining a precise restitution order, explaining as follows:

> The calculation has been difficult because monies paid to the Stallmans to some extent did purchase some equipment or some materials that were delivered and added to the site, so the refined number has been a difficult target for us to completely and totally define, Judge. But $413,000 is the figure that we believe roughly calculates the total losses.

Defendant's trial counsel also spoke of the difficulty of establishing a precise restitution amount:

> Your Honor, . . . it's been a real moving number over the last six or eight months. We've been trying to follow it, we have a bookkeeper who has been working on it along with others. But, it certainly is in the area of two to 400 thousand dollars, depending on where it ends up.

The trial court referenced this lack of detailed information by stating that, "on your best day, you stole $200,000, probably more like $400,000," and referenced ongoing civil proceedings involving related reimbursements. Defendant's presentence investigation report also reflected the lack of information about restitution at the time of sentencing, by stating that Amber was unsure of the amount Amber wanted in restitution, and that Dietel/McNally wanted $401,331 in restitution, that the local crime victim's office reported that "there is no set restitution amount at the time," but that it had been "indicated approximately $400,000.00 was owed to" Amber, Dietel/McNally, and subcontractors. As noted, the trial court initially ordered defendant to pay $413,000 in restitution.

The record for the evidentiary hearing contained several stipulations offering more precise figures on which the trial court could arrive at a comprehensive restitution order. A stipulation established, for example, that the subcontractors had released the liens on Amber's and Dietel/McNally's properties, detailed settlement amounts that Elizabeth Stallman paid to subcontractors and victims while indicating that it had yet to be determined how much of these payments to subcontractors were applied to the Amber and Dietel/McNally projects, and contained information about defendant's 2020 settlement with a subcontractor through the bankruptcy court. The record also contained an October 3, 2018 order of the bankruptcy court approving a $63,750 settlement between Elizabeth Stallman and Dietel/McNally. And defendant testified that he was unaware of Elizabeth's settlements with creditors until after he was released from prison. Because the trial court was considering more precise amounts, along with new information that had not been considered during defendant's sentencing, it did not abuse its discretion by granting defendant's motion for a hearing to revisit and amend the restitution order.

## IV. RESTITUTION ORDER

Plaintiff next argues that there was a procedural error during the restitution hearing because the trial court permitted defendant to present his argument first, despite plaintiff's having the burden to prove the victims' losses. See MCL 780.767(4). Further, "an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence." *Grant*, 455 Mich at 243.

In this case, the order of presentation was discussed during the motion hearing. The trial court stated that plaintiff had the burden, and invited plaintiff to make an opening statement. Defendant's trial counsel interjected that his motion was to amend the restitution order, but that plaintiff had also filed a motion to amend restitution, and that counsel would accept the trial court's decision regarding which party should speak first. Plaintiff then offered no comments, and the trial court stated that defendant should begin because he had the burden to prove its motion. Notably, because defendant's original judgment of sentence included a specific amount of restitution, the prosecution had in fact already met its burden to establish an amount of restitution. Accordingly, because both parties had moved to amend the restitution provision, both had the burden of supporting their respective motions. Plaintiff did not contend below that it should argue first, and does not on appeal assert that any error regarding the order of presentation prejudiced its position. Thus, plaintiff has not demonstrated that it was plain error for the trial court to allow defendant to argue its motion first.

Plaintiff further argues that the trial court legally erred by effectively treating defendant's ex-wife, Elizabeth Stallman, as a codefendant by considering her uncharged conduct and ordering joint and several liability in the restitution order. We see no such impropriety.

A trial court's "restitution award that is based solely on uncharged conduct" should not be upheld. *People v McKinley*, 496 Mich 410, 413; 852 NW2d 770 (2014). Additionally, a trial court may make restitution obligations joint and several only as among codefendants. *People v Foster*, 319 Mich App 365, 386-387; 901 NW2d 127 (2017). However, in this case the trial court referenced neither uncharged conduct nor any supposed codefendant in its restitution order. Instead, the trial court based that order on the amounts defendant misappropriated from persons who had contracted with him for construction while giving defendant credit for amounts that Elizabeth Stallman had paid those victims in settlements in her own separate civil proceedings. The trial court noted that defendant's former spouse was not charged with a crime, and explained that it was crediting the amount that she had reimbursed the victims because the victims were entitled to be made whole after their losses, not to double recovery. Moreover, MCL 780.766(9) provides that a trial court may offset a restitution award by the amount of damages a victim was able to recover in civil actions. Accordingly, the trial court did not make defendant's ex-wife a part of defendant's restitution order, other than by considering payments that the victims had received from her in calculating the amount yet needed to make them whole. The trial court thus did not actually assign any of defendant's restitution liability to defendant's former wife.

Plaintiff additionally argues that the trial court erred by ordering that defendant pay $152,201 in restitution to subcontractors, and only $46,296 in restitution to Amber and Dietel/McNally, whose money defendant had misappropriated. Plaintiff states that only Amber and Dietel/McNally were included in the original restitution order. However, the trial court

explained its decision on the basis of the testimony from the hearing. Amber and Dietel/McNally had paid defendant for supplies and labor they had received from the subcontractors, who were not paid. The trial court stated that the subcontractors had provided $366,703 in goods and services to Amber and Dietel/McNally, but had been reimbursed only $142,384 by settlements with Elizabeth Stallman, which required further reimbursement from defendant in restitution. Plaintiff does not dispute these factual findings as developed with the more complete postsentencing information.

In order to determine the amount of restitution to order, "the court shall consider the amount of the loss sustained by any victim as a result of the offense." MCL 780.767(1). The purpose of restitution laws is "to enable victims to be compensated fairly for their suffering at the hands of convicted offenders." *People v Garrison*, 495 Mich 362, 368; 852 NW2d 45 (2014). Thus, the restitution awarded to the subcontractors, Dietel/McNally, and Amber based on their losses was within the range of reasonable and principled outcomes.

Plaintiff also argues that the trial court made several errors in its calculations of the amount of restitution owed to each victim. Plaintiff states that the trial court failed to account for the portion of Elizabeth Stallman's settlements with subcontractors that was for work outside the pertinent county, that the amount awarded to Dietel/McNally and Amber resulted in a net loss for them because it did not fully account for the costs incurred while seeking reparation from defendant, that Elizabeth Stallman's civil settlements should not have substituted for defendant's criminal liability, and that the amount of restitution ordered would not make the victims whole. However, the parties stipulated to the amounts of loss suffered by each of the subcontractors before the restitution hearing, and the stipulation also recognized total restitution due the victims at $413,000. The trial court's task was to determine the losses of each victim as a result of defendant's conduct in order to ensure that each was compensated. As discussed, Dietel/McNally and Amber paid defendant, who withheld most of those funds from the subcontractors who performed the pertinent work. When the subcontractors demanded payment, they placed liens on the property of Dietel/McNally and of Amber. The parties agreed on the amounts that defendant misappropriated. The trial court determined that the property owners were made whole because the work was performed and the liens were rescinded, and they were to receive an additional $46,296 in restitution from defendant for costs in addition to the settlement money they received from Elizabeth Stallman. The restitution award also ensured compensation to the subcontractors for the portion of their work that had not been reimbursed after their settlements with Elizabeth Stallman. The focus of restitution is "not on what a defendant took, but what a victim lost because of the defendant's criminal activity." *Gubachy*, 272 Mich App at 713. In this case, the trial court considered the losses of all of the victims and arranged restitution to meet the losses that each had sustained after Elizabeth Stallman had independently reimbursed portions of them. The trial court did not abuse its discretion when ordering defendant's restitution amounts.

## V. RESTITUTION PAYMENTS

Although the trial court granted plaintiff's motion to increase defendant's monthly restitution payments, plaintiff argues that the trial court erred by doing so by increasing defendant's monthly restitution payments $50 to only $150. Plaintiff had requested an increase to $400 per month, and on appeal argues for $1,000 per month while pointing out that, at the latter rate, it would take over 16 years for defendant to satisfy the debt.

-5-

Plaintiff emphasizes that defendant had asserted at sentencing that he could pay $1,000 a month, and defendant confirmed at the motion hearing that his attorney had stated at sentencing that defendant could manage monthly restitution payments of $1,000, but defendant also explained that that position was based on his financial status before he was incarcerated, which had since changed. Defendant testified that his income was now $52,000 per year, and that his monthly expenses included $200 settlement payments to a subcontractor, $50 restitution, $1,700 in rent. In defendant's brief for his motion hearing, he stated that he also had a $2,400 balloon-payment obligation for his settlement payment to the subcontractor, making that payment $400 a month, and that he had a monthly $500 obligation for 11 months to pay his attorney fees. The trial court concluded as follows:

> Currently, the defendant is paying approximately $1,700 a month for rent and utilities, $500 a month for legal/attorney fees and $400 a month to Old Mission Enterprises, pursuant to a civil judgment. Defendant anticipates his payments for attorney fees will cease within the next year and he is pursuing an accelerated payment plan with Old Mission Enterprises. Based on these current financial obligations, the Court believes that a monthly restitution amount of $150 is reasonable. In addition, considering the likely change in defendant's income over the next year, another hearing to address the amount of monthly restitution would be prudent.

The trial court thus considered defendant's income and expenses, and calculated an increased monthly payment for restitution. The court's openness to a future hearing on the matter as defendant's financial situation might change was responsive to the extended period that the victims will have to wait for satisfaction. Despite defendant's optimistic statements about managing monthly restitution payments at sentencing—where he was presumably attempting to minimize his prospects for incarceration—the trial court properly considered updated information in deciding on the new rate of payment. The decision to increase the monthly amount by less than what plaintiff wanted was thus within the range of reasonable and principled outcomes.

## VI. VICTIMS' RIGHTS[2]

Plaintiff's final argument is that Dietel/McNally's and Amber's due-process rights were violated by the trial court's amended restitution award. We disagree.

The thrust of plaintiff's argument is that the reduction of the restitution awarded to Dietel/McNally and Amber from $413,000 in the original order, to $46,296 in the amended restitution order, was unfair. However, the trial court reasoned that Dietel/McNally and Amber received the benefit of the $366,703 that they paid to defendant because the subcontractors, who were not paid, provided the equivalent amount of goods and services to Dietel/McNally and Amber. The trial court awarded restitution of $44,296 to Dietel/McNally and Amber for expenses that they had incurred as a result of defendant's misappropriating their payments. In addition,

---

[2] Crime victims have a statutory and constitutional right to restitution. See Const 1963, art 1, § 24; *People v Bell*, 276 Mich App 342, 346; 741 NW2d 57 (2007).

Dietel/McNally and Amber had received a total of $72,117 in settlement payments from Elizabeth Stallman, and all liens against their properties by the subcontractors for unpaid but completed work were released. "The purpose of restitution is to allow crime victims to recoup losses suffered as a result of criminal conduct." *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003). In this case, because the losses of Dietel/McNally and Amber were forwarded to the subcontractors who completed work and were not paid, their losses were recovered when the liens for unpaid but completed work were released from their properties, they collected $72,117 from Elizabeth Stallman, and they were awarded $46,296 in restitution from defendant for additional expenses. Therefore, even though the amended amount of restitution was much less than the original total, Dietel/McNally and Amber nonetheless stand to recoup the losses they suffered from defendant's misconduct.

Affirmed.

/s/ Mark J. Cavanaugh
/s/ Jane E. Markey
/s/ Deborah A. Servitto